St. Louis Southwestern Railway Company of Texas v.
Pearl Wright.

Decided June 13, 1903.

**1.—Wife's Separate Property—Unliquidated Damages.**

A right to unliquidated damages for personal injury accruing to a feme sole does not become community property upon her marriage before the claim is reduced to judgment. Rev. Stats., art. 2967.

**2.—Same—Parties—Joinder of Husband.**

Upon the marriage of the feme sole plaintiff in an action for such damages her husband becomes a necessary party to the suit, but her retention as a party plaintiff with him does not constitute a misjoinder of parties. Rev. Stats., art. 1252.

**3.—Carrier of Passengers—Misconduct of Passengers—Pleading.**

In an action by a passenger against a carrier for permitting other passengers to insult and humiliate her by using offensive language in her presence, it was sufficient for the petition to allege that such language was obscene, vulgar, profane and indecent without setting it out.

**4.—Same—Evidence of Obscene Language.**

But plaintiff's testimony that the passengers "cursed and used vulgar and obscene language," was the statement of a conclusion. The words used should have been given, or at least their substance and meaning.

Appeal from the District Court of Navarro. Tried below before Hon. L. B. Cobb.

*Frost, Neblett & Blanding* and *E. B. Perkins,* for appellant.

*J. T. Williams* and *Callicutt & Call,* for appellee.

TEMPLETON, Associate Justice.—Pearl Wright, a girl 18 years old, brought this suit against the St. Louis Southwestern Railway Company of Texas, and for cause of action alleged that while she was a passenger on one of the company's trains a number of other passengers used profane, vulgar, obscene and indecent language in her presence and hearing, which greatly distressed and humiliated her; that the conductor in charge of the train was present at the time and was aware of the misconduct of the offending passengers, but did not prevent or attempt to prevent them from insulting the plaintiff by their objectionable behavior. A trial by jury resulted in a judgment for the plaintiff for $800.

After the suit was begun and before the trial, the plaintiff married a man named Williams. The fact was set up by amended petition, and Williams was made a party plaintiff. The defendant demurred to the petition on the ground that there was a misjoinder of parties plaintiff, and requested a special charge directing a verdict for the defendant because of the misjoinder. The demurrer was overruled and the charge was refused. It is insisted that the plaintiff's unliquidated claim for damages became community property upon her marriage, and

that her husband alone was entitled to maintain a suit for the recovery thereof. The proposition is not tenable. It has been held that a claim for unliquidated damages for personal injuries received by the wife during coverture is community property, and that the husband is the proper party to sue for the recovery of such damages. Ezell v. Dodson, 60 Texas, 331; Railway Co. v. Burnett, 61 Texas, 638. But it is not the law that a claim of that character which has accrued in favor of the wife while a feme sole becomes community property upon her marriage. It is provided by article 2967 Revised Statutes, that "all property, both real and personal, of the wife, owned or claimed by her before marriage, * * * shall be the separate property of the wife." We think the demand sued on herein was property within the meaning of the statute. The right of the plaintiff Pearl to recover was fully vested before her marriage, and was in nowise affected by her marriage. That event did not transfer to her husband an interest in the cause of action. No right of any kind against the railway company was acquired after her marriage. Under the provisions of article 1252, Revised Statutes, the suit which she had brought while a feme sole did not abate upon her marriage, but her husband became a necessary party plaintiff. The statute does not provide that the wife shall be dismissed from the suit, and we conclude that the trial court did not err in overruling the demurrer and in refusing to give the requested charge.

It was alleged in the petition that while the plaintiff was a passenger on one of the defendant's trains "several drunken men entered said coach, who were also passengers on said train, and in the presence and hearing of plaintiff cursed, and used vulgar, indecent and obscene language, sang vulgar songs and repeated vulgar and obscene verses." The defendant demurred to the petition on the ground that the language used was not stated, and that the aforesaid allegation amounted to no more than a conclusion of the pleader. We think the demurrer was properly overruled. The plaintiff's right to recover did not depend on the particular language used. Her suit was not based on the offensive words uttered by her fellow passengers, but on the negligence of the conductor in failing to interfere for her protection. She was bound to allege misconduct which called for the interposition of the conductor, and the use of profane, vulgar, obscene and indecent language in her presence and hearing would be such misconduct. It was the nature and character of the language used, and not the utterance of any particular words, which made it the duty of the conductor to intervene. The averments of the petition were sufficient to fully inform the defendant of the nature of the plaintiff's cause of action, and it was unnecessary for the plaintiff to plead the evidence on which she relied to sustain the allegations of her petition.

The plaintiff testified on the trial that "the passengers referred to cursed and used vulgar and obscene language and sang vulgar songs in the coach I was in, which both frightened and humiliated me." This

statement of the witness was objected to by the defendant on the ground that the same was merely a conclusion of the witness, the contention being that the witness should have been interrogated as to what language was used, and required to state the substance of what was said by the offending passengers. We are of the opinion that the objection should have been sustained. The witness may have considered language vulgar and obscene which was not so in fact. We do not mean to hold that the witness should be required to give the exact language. Generally, the literal expressions used would not be remembered accurately, but the witness should give the language as nearly as possible, and if none of the words could be remembered the substance and meaning thereof should be stated. Enough of the language or the substance thereof should be proven to show that the language was of the character alleged and to enable the jury to properly estimate the damages. The plaintiff can not be relieved of the burden of proving her case because it would be embarrassing to her to repeat in court the offensive language. Her yielding to necessity should not cause her the slightest humiliation, and would not tend to disgrace her in public estimation.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*