**DIXIE MOTOR COACH CORPORATION v. SHIVERS et al.**

No. 13871.

Court of Civil Appeals of Texas. Fort Worth.

June 16, 1939.

Rehearing Denied Sept. 22, 1939.

Barnes, McElroy & Hudspeth, of Terrell, and Walker, Smith & Shannon, of Fort Worth, for appellant.

Jesse E. Martin, Leo Brewster, and Arthur Lee Moore, all of Fort Worth, for appellees Mrs. Geneva Shivers and Henry Shivers and wife.

McGown, McGown, Godfrey & Logan, of Fort Worth, for appellee intervener Home Ins. Co.

BROWN, Justice.

Mrs. Geneva Shivers was married to Tommie J. Shivers on September 16th, 1936, and Tommie J. Shivers was killed in an automobile accident on October 16th following. As the surviving widow, she brought suit for damages on December 11th, 1936.

The mother and father of the deceased, towit, Henry Shivers and his wife, on the same day filed suit to recover damages for Tommie J. Shivers' death. The causes were consolidated, and on October 16th, 1937, these three plaintiffs filed their first amended petition, which alleges that Mrs. Geneva Shivers is "a widow" and the surviving wife of Tommie J. Shivers, and during the trial, on January 17th, 1938, all the parties plaintiff filed a supplemental petition. When the judgment was rendered, on January 29th, 1938, recovery, on the verdict of the jury, was rendered for "Mrs. Geneva Shivers".

When on the witness stand, testifying in her own behalf, the former Mrs. Geneva Shivers testified that she was then the wife of John Kinman, that she was Mrs. Geneva Kinman, and that she married John Kinman "on April 17th, 1937," which was six months before the first amended petition was filed and nine months before the case was tried and the supplemental petition was filed.

It is to be noted that, although married to John Kinman long before any of the pleadings were filed, on which the trial was had, at no time did John Kinman join in the petition for recovery, and at no time did Mrs. Geneva Kinman account for the absence of her then husband as a party plaintiff, nor was it alleged that he refused to join the wife in the suit, nor was any effort made to show the right of the wife to prosecute the suit in her own name and without the joinder of her husband.

The defendant urged a general demurrer, which was overruled, as is shown by the judgment.

Mr. Justice Speer, speaking for this court, in the case of Newell v. State, 103 S.W.2d 194, 195, reviews many authorities, and commenting upon Art. 1983 (R.C.S.), which provides: "The husband may sue either alone or jointly with his wife for the recovery of the separate property of the wife; and, in case he fails or neglects so to do, she may sue alone by authority of the court", said: "In construing the above article, it has many times been held that no such action can be maintained by the wife unless she shall allege that her husband has failed and neglected to either prosecute such suit or refuses to join her in the action; and, further, she must specifically allege facts which show the property sought to be recovered belongs to her. Schwulst v. Neely (Tex.Civ.App.) 50 S.W. 608; Barmore v. Darragh (Tex.Civ.App.) 227 S.W. 522; Hill v. Kelsey (Tex.Civ. App.) 89 S.W.2d 1017; Kreis v. Kreis (Tex.Civ.App.) 57 S.W.2d 1107; Elder v. Reclamation District (Tex.Civ.App.) 64 S. W.2d 981. * * * It was said by the court in the case of Barmore v. Darragh (Tex.Civ.App.) 227 S.W. 522, 523: 'And no court should render a judgment or decree when it is apparent that all parties are not before it. Under such circumstances the court will itself raise the objection and refuse to proceed to judgment. Buffalo Bayou Ship Channel Co. v. Bruly, 45 Tex. 6; East Line & R. R. R. Co. v. Culberson, 68 Tex. 664, 5 S.W. 820; Ebell v. Bursinger, 70 Tex. 120, 8 S.W. 77.'"

It appears that under the provisions of Article 2084 (R.C.S.) when a feme sole has brought suit and subsequently marries, the suit does not abate, but in St. Louis Southwestern R. Co. of Texas v. Wright, 33 Tex.Civ.App. 80, 75 S.W. 565, it was held that the husband is a necessary party to the suit. A writ of error was refused in that case.

In such cases as Reed v. Cavitt, 10 Tex. Civ.App. 373, 30 S.W. 575, and Miller v. Sullivan, 14 Tex.Civ.App. 112, 33 S.W. 695, it is held that the husband of a defendant, who married after she was sued as a feme sole, is a necessary party to the suit, and in Powell v. Dyer, Tex.Civ.App., 227 S.W. 731, under such circumstances, it was held that no effective judgment could be rendered against the wife unless the husband was joined as a defendant.

The matter that puzzles us, in the case at bar, is not the fact that this suit was begun by Mrs. Geneva Shivers, a widow, who, pending a trial, married one John Kinman, and no effort was made by either the plaintiff or the defendants to disclose this fact and to bring in the new husband, and that under the very old case of San Antonio St. R. Co. v. Caillonette, 79 Tex. 341, 15 S.W. 390, by a Commissioner's opinion, the Supreme Court held, that the failure of the plaintiff to join in her husband, in a case like the one at bar, cannot be raised during the trial, and that such opinion holds in effect that such a defect in parties is thereby waived by the defendant, but we are puzzled over the fact that the judgment was not taken in the name of the plaintiff—Mrs. Geneva Kinman—but was taken in the name of Mrs. Geneva Shivers, who sued as a widow, when in truth and in fact no such person was then in existence and no one knew this better than Mrs. Kinman, the true plaintiff.

If no effective judgment can be rendered against a married woman who was sued as a feme sole and married before the cause was tried (see Powell v. Dyer et al., Tex.Civ.App., 227 S.W. 731 and cases cited), then we do not see the logic in saying that a woman (a widow) may bring suit as a feme sole, marry during the pendency of the suit, amend her pleadings, after she marries, and continue to sue as a widow, and disclose her status on the witness stand and be permitted to recover a judgment in the name she alleges she bore as a widow.

While we do not reverse the case because of the facts shown, we think the matter serious enough to call it to the attention of all parties.

It seems, from the record, that, very shortly after Geneva Shivers married Tommie J. Shivers, she left him and went to Rusk County, Texas, some distance from Fort Worth, where the parties were married and lived, and that the present husband, John Kinman, gave Geneva Shivers some money before she left.

The persons to whose home she went were close to Kinman. So close that in writing to Geneva Shivers the letters were addressed to the man of the house—one B. H. Iles, whose post office address shows to be "Box 207, Overton, Texas."

Geneva Shivers first denied receiving any letters from Kinman while in Overton, but, when two such letters, together with the envelopes which carried them, were produced, she admitted that she received them, and others, but she testified that she did not answer any of the letters.

The letters offered in evidence show that Kinman was in love with Geneva Shivers, that he was a party to her leaving Tommie. J. Shivers and that he did not want her to return to Shivers. In the first letter he tells her that he is being true to her and asks her not to disappoint him "and go back". In that letter he tells her he is writing her in the post office and that he "just got" her letter and "was tickled to death". From this letter it would appear that Geneva Shivers wrote to Kinman before he wrote to her, but it is certain that the contents of the letter show that they were corresponding.

In this first letter, Kinman tells Geneva Shivers to consult a lawyer about obtaining a divorce, and that he wishes he could come down to see her, but that he can not, because "they are watching me." He further tells her that he would send her some money but that he has none and perhaps he can send some "in a few days". The letter is full of terms of endearment and shows upon its face that Kinman wants Geneva Shivers to keep away from Shivers, to obtain a divorce and to marry him, and that he is anxious to assist her financially while she stays away from Fort Worth and Shivers, and he cautions her: "Let's try not to see each other until this is settled or died down because Louise told about you seeing me Sunday and he keeps *threating* somebody life. Mrs. Shivers took the gun away from him."

The next letter offered in evidence tells Geneva Shivers that her mother seemed "peeved at me every since T. J. came back from down there. I told Conway this evening to tell her I had heard from you. T. J. was riding around with some girl in the car with him last nite don't know who she was but he came by so I could

see." He tells her in this letter that he can't come down to see her "now although I don't know what I would like to do better. But it would liable to cause trouble." But he tells her he will "come down as soon as I can."

He says further: "Hun I didn't know how much you meant to my life until I like to lost you." He tells her his plan to visit her by riding on a gas truck and leaving his own car so "they won't miss me before I get back." He says: "Everybody I have seen that knows you have run off is just tickled to death except Frank and Pauline and your mother said they were mad at you. But what do they mean to us?"

These letters were offered in evidence by the defendant and were excluded by the court.

It is to be noted that Geneva Shivers left Fort Worth and her husband, Tommie J. Shivers, just a few days after she was married to him; that these letters were written shortly after she had gone to Overton, Texas; that Tommie Shivers was killed in an accident within one month after he married Geneva Shivers; that the testimony nowhere discloses that she ever lived with Tommie Shivers after she left him and prior to his death, and that she married John Kinman six months after Shivers' death.

■ The very theory on which a surviving wife is permitted to recover is "the reasonable pecuniary value, if any, of the counsel, protection and services, and monetary contributions, if any, which the jury believes from a preponderance of the evidence the wife would have received from the deceased husband had he lived." The charge of the court so declares.

Such recovery is in its very nature largely problematical and speculative.

The jury must find, from the evidence, that, in all likelihood, the husband would have contributed these valuable services to the surviving wife.

■ Where there is no friction between husband and wife, no facts showing the likelihood of a final, legal separation, and the relationship shows a calm and undisturbed matrimonial sea, there is nothing for the jury to find except the reasonable pecuniary value of these services and contributions, because it must be presumed that the relationship will continue until

death, under such natural human relations.

But such a picture is not presented to us in the case at bar.

Whatever evidence tends to show the improbability of the continuance of the marriage relations, and the improbability of the continuance of rendition of services and contributions upon the part of the spouse, appears to us to be material and to bear directly upon right of recovery and the probable amount of recovery, in the case at bar. This conclusion is reached by us because the writer of these letters actually married Geneva Shivers just a few months after Tommie Shivers' death.

We do not believe that the general rule relied upon by appellees, to the effect that unanswered letters are not admissible against the addressee and that statements in such letters are self-serving declarations, is controlling in this case.

Furthermore, contrary to appellees' contention, we think the letters and the testimony tend to show "a mutual running correspondence" had by and between Geneva Shivers and John Kinman.

■ We think it was error to exclude these letters. Citizens' Tel. Co. v. Thomas, 45 Tex.Civ.App. 20, 99 S.W. 879, writ refused; Holland v. Closs, Tex.Civ.App., 146 S.W. 671; Texas & P. R. Co. v. King, Tex.Civ.App., 18 S.W.2d 757, writ refused.

■ In connection with the assignment of error, which arises over the exclusion of these letters, we find that the trial court, in charging the jury concerning what could and could not be considered in arriving at the pecuniary benefits Mrs. Shivers had a reasonable expectation of receiving from her deceased husband, charged the jury as follows: "In this connection you will not consider the fact of Mrs. Geneva Shivers' second marriage for the purpose of either increasing or diminishing her damages, if any."

Timely objection was made to this part of the charge because "the jury has a right to consider all the facts and circumstances in the testimony with reference to the probability of any divorce and the probability of Tommie J. Shivers ceasing to contribute to the plaintiff, and the instruction as given tends to inform the jury that they cannot consider her second marriage for any purpose and places a greater burden upon the defendant than the law requires."

Under the facts and circumstances disclosed in this case, we think the charge erroneous.

This is not a case where husband and wife were living in harmony and apparent contentment when the husband died, and subsequently the wife married some man who was not interested in the separation of the husband and wife, and in marrying the wife, after the bonds of matrimony are dissolved. Here we have friction between and a separation of the husband and wife, and a third party interested in the separation and urging its continuance and the obtaining of a divorce, and assisting in the separation and in maintaining the wife during her absence, and the marriage of the surviving wife, within a few months after the accidental death of the husband, to the third party.

We think the charge instructed the jury not to consider a fact that should have been considered by the jury, in connection with many other facts, in arriving at the pecuniary loss sustained by Geneva Shivers.

We see no necessity in commenting upon the argument made by plaintiffs' counsel in connection with this charge. It doubtless will not be made on another trial, when the charge does not contain the language complained about and which brought about the argument.

We are inclined to the opinion that the argument of plaintiffs' counsel in which he groups the "offensive" issues, those upon which the plaintiff relies, and tells the jury that "Taking that group of questions from our viewpoint, they can all be answered, according to the way we see it, the same way—by the simple answer 'yes'. That is all you would have to do, if you take our viewpoint of this case, the answers to the first 29 questions will be 'yes' with one exception, and that is question Number 3," and the further argument in connection with the defensive issues in which counsel showed the jury that they should answer certain questions a certain way and then they did not have the burden of answering certain others, and then concluded: "So that, as I say, the charge is simplified a good deal. If you take our viewpoint of the case on the same 45 issues there that submit the questions as to whether or not Tommie Shivers or the boy that was pushing him were negligent, you don't have to answer, according to our theory of the case, but twelve questions and that

will dispose of all of them," is argument treading upon dangerous ground.

The case before us is not unlike the situation disclosed in the case of Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564, 565, 568, in which the Eastland Court condemned an argument in which counsel told the jury that, "plaintiffs' theory of the case is presented in the first seven questions listed as 'special issues' and it is the plaintiffs' theory that you should answer all these questions in the affirmative, and it would not be necessary to answer any of the following questions—It is true the court has submitted other questions being the theory of the defendant."

This situation will doubtless not arise on the next trial.

It seems that Henry Shivers, surviving father of Tommie J. Shivers, and the surviving wife, Geneva Shivers, entered into a mutual contract, by and through which Mrs. Geneva Shivers agreed to give Henry Shivers one-half of whatever sum she recovered, and Henry Shivers agreed to give Geneva Shivers one-half of whatever sum he recovered.

The defendants sought to introduce the contract in evidence and to establish this agreement had by and between the parties plaintiff. The court excluded the testimony and the evidence.

By the record it is shown that Henry Shivers and his wife brought suit in their own name for loss sustained by them, and that Geneva Shivers likewise brought a separate suit, and that subsequently the causes were consolidated.

The conduct on the part of the plaintiffs suggests to the mind of a normal person that there was grave doubt in the minds of these parties plaintiff that all of them could and would recover and that they pooled their interests, whatever they were, and contracted so that whoever did recover, the loser would profit by so much as one-half of that recovery.

This, to us, presents a most unusual case of personal interest in a lawsuit.

These contracting parties were depending upon the testimony of one another to make out a case for recovery by at least one of them.

██ Under such circumstances, as are disclosed in this case, it appears to us that the establishing of such interest was a right that flowed to the defendants, and its pres-

ence in this suit was such that it undoubtedly could be considered by the jury in passing upon the credibility of these witnesses, who are parties to the contract.

The Supreme Court, in Wentworth v. Crawford, 11 Tex. 127, 132, said: "It is the well settled doctrine of the Courts, founded on strong philosophical reasoning, that anything calculated to bias a witness, is proper testimony, to enable the jury to determine how his evidence can be relied upon."

The Supreme Court quoted this language with approval in Trinity County Lumber Co. v. Denham, 88 Tex. 203, 30 S.W. 856. Many other cases may be cited, including Allday v. Cage, 148 S.W. 838, by this court.

We are not readily inclined to hold that the recovery by a surviving wife is excessive, if there were no error in the record. Ordinarily, unless the amount is out of all reason, such judgments are permitted to stand. But here is a case where common sense tells us that under the facts, a large recovery by the wife must preclude a large recovery by the parents, and vice versa.

If the case is properly tried and the jury should find for the surviving wife a substantial sum of money, we would not readily hold that such a sum for the death of a seventeen year old husband is excessive in an ordinary case; but when it comes to the recovery, in this suit, by the parents, a different question is presented. Here is a mere boy making a modest sum of money per month, at whatever employment he obtained. He is not trained for any particular vocation, but works at this, that and the other job, here, there and yonder.

His parents are not shown to be old, infirm and dependent upon him. Whatever they may recover must be bottomed upon what the evidence discloses is the amount that the son would be reasonably expected to contribute to the support of his parents.

Having taken upon himself the burden of supporting himself and a wife as an unskilled laborer, with a modest income, if the jury believed that the marriage relations would in all likelihood continue until the husband's services to the wife were reasonably worth $10,500, it is not reasonable to suppose that the son would have contributed $4,000 to his parents.

We do not believe that the evidence tends to support such a recovery. The testimony concerning the boy's assistance on his father's farm, of 40 acres, and his expressions of a desire and willingness to continue to assist his father and to help support his parents, if they needed his help, is not enough to support a $4,000 recovery, in this case.

The court instructed the jury in finding for the parents to allow "for the loss of the contributions of money or property or labor or services, if any, which the deceased * * * would have been reasonably expected to make to the plaintiffs, Mr. and Mrs. Henry Shivers, if he had lived."

It is quite certain that if this son had continued to live with his wife, he would have been compelled to "labor" to support her. We cannot reasonably see how he could contribute "labor" to his parents and, at the same time, "labor" to support his wife. Being married, we do not see any duty resting upon the son to give "labor" or "services" to his parents. The interests and duties clearly clash. There would be no obligation to continue to support the parents, under these circumstances.

We are not clear as to what "services" the trial court had in mind, in charging the jury, unless it referred to the "labor" which had been contributed by the son to the father, and about which testimony was introduced. Assuredly no other "services" are compensable.

Under this charge, as worded, without any further guide to the jury, it borders dangerously upon a double recovery, if it does not in fact permit a double recovery. This charge advised the jury that after the marriage of Tommie Shivers he was under no legal obligation "to contribute to his parents," but said nothing about his obligation to "labor" and render "services" for his parents, and yet the jury is told to consider these matters in arriving at a verdict.

The court having recognized the primary obligation to be toward the wife, it seems to us that the parents could recover only that which the son would have probably contributed to the parents, if anything, over and above that which he would have probably contributed to his wife.

This court, in the case of Chicago R. I. & G. R. Co. v. Hanna, 273 S.W. 280, writ dismissed, has expressed itself, where the minor son worked on his mother's farm (as this son did, at times) and where the minor son was not married and had no obligations resting upon him to support a wife. See Mr. Justice Dunklin's opinion.

We think the verdict for the parents is excessive, under the record before us, but we suggest no remittitur because we believe the entire judgment should be reversed and the cause remanded for a new trial; and it is so ordered.