## WOODMEN OF WORLD LIFE INS. SOC. v. SMAULEY.

### No. 2113.

Court of Civil Appeals of Texas. Eastland.

June 20, 1941.

Rehearing Denied July 15, 1941.

E. M. Overshiner, of Abilene, and Thomas & Thomas, of Anson, for appellant.

Smith & Smith, of Anson, for appellee.

PEARSON, Special Justice.

The appellee, Viola M. Smauley, as a feme sole, instituted this action in the District Court of Fisher County, Texas, against the appellant, the Woodmen of the World Life Insurance Society, a fraternal benefit association, seeking to recover $1,000 double indemnity, reasonable attorney's fees and 12 per cent damages on a double indemnity benefit certificate attached to and made a part of a life benefit certificate or policy of insurance issued by the appellant on the life of her husband, Harry M. Smauley, deceased.

For convenience the parties will be designated as in the trial court.

The case went to trial on plaintiff's second amended original petition, in which she alleged that the defendant on March 18, 1937, issued a policy or certificate of insurance in the principal sum of $1,000 on the life of her deceased husband. Her petition further alleged that attached to said certificate was a double indemnity agreement, whereby the defendant agreed, in consideration of 15 cents per month increased dues, to pay the named beneficiary an additional $1,000 if the insured met his death by "accidental means." Numerous conditions or exceptions, exempting the defendant from liability, were set out in the double indemnity agreement. These exceptions will be considered more in detail later in this opinion.

The plaintiff was the named beneficiary in both the life certificate and the double indemnity agreement. Also the entire policy of insurance was in full force and effect at the death of the insured.

The defendant answered by general demurrer, certain special exceptions, general denial, a plea of accord and satisfaction, and certain defensive pleas, among which was that the insured died from an "injury intentionally inflicted by another", which was one of the exceptions contained in the double indemnity agreement exempting the defendant from liability. The general demurrer and special exceptions were overruled by the trial court, the defendant excepting.

The case was tried to a jury and resulted in a verdict and judgment for the plaintiff for $1,000 principal, 12% damages, $300 attorney's fees, interest, and cost.

The principal facts are not materially in dispute except the "means" by which the insured met his death. The plaintiff and the insured, together with his brother, J. P. Smauley, and several other young people attended a dance and reception in Sweetwater, Texas, on the night of September 13, 1938. About 10 o'clock p. m., J. P. Smauley, accompanied by several others, left the dance hall and went across the street to a drink stand for some refreshments. In the drink stand J. P. Smauley got into an argument with one Gloyd McCluskey and a near fight ensued. J. P. Smauley, with his friends, left the drink stand shortly and started back across the street to the dance hall. They were followed by McCluskey and the quarrel between McCluskey and J. P. Smauley waxed warmer. A physical clash between them seemed impending. About this time Harry M. Smauley, the insured, a brother of J. P. Smauley, appeared on the scene and attempted to settle the dispute between his brother and McCluskey. Harry M. Smauley, the insured, was not acquainted with McCluskey and had never seen him before. The record conclusively reveals that Harry M. Smauley was merely attempting to play the role of peacemaker between his brother and McCluskey. In the melee that occurred at the foot of the stairs leading up to the dance hall, McCluskey struck Harry M. Smauley in the face with his fist, knocking him down, the back of Harry M. Smauley's head striking the cement sidewalk, lacerating his scalp and apparently fracturing his skull. The blow or fall rendered Harry M. Smauley unconscious, and he died about six hours later. All the fact witnesses testified that Harry M. Smauley was merely attempting to settle the dispute between his brother and McCluskey, when the insured was struck and knocked down by McCluskey. McCluskey testified by deposition that he did not know Harry M. Smauley; that he had no ill-feeling toward him; that he did not intentionally strike Harry M. Smauley; that he intended to strike J. P. Smauley and not Harry M. Smauley.

In response to special issues the jury found: (1) that the death of Harry M. Smauley occurred in consequence of bodily injury effected through external, violent, and accidental means, and independently of all other causes; (2) that there was a visible contusion or wound on the exterior of the body of Harry M. Smauley at the time of his death; (3) that he did not die from an injury intentionally inflicted by McCluskey; (4) that $300 was a reasonable attorney's fee.

Within a short time after the death of the insured, L. E. Alvis, clerk of the Local Camp of defendant at Roby, Texas, reported the death of the member to the home office. The proof of the death was made out on a form provided for said purpose. Upon receiving the proof of death in the home office, the defendant in due course issued its check made payable to the order of the plaintiff in the sum of $997.30. This check represented the $1,000 due by the defendant to the plaintiff on the life of her husband under the death benefit certificate, less the current month's dues of $2.70 owing by the member. The defendant declined to pay the additional $1,000 provided for in the double indemnity provision of the certificate, contending that death of the member came within the exceptions set out in the double indemnity agreement, exempting it from liability.

The defendant's first, second, and third assignments, and relating propositions, are leveled at the sufficiency of the plaintiff's petition and proof. The contention is made that in order to plead a case of liability, the plaintiff was required to plead the provisions, conditions, and exceptions contained in the double indemnity agreement sued on, and to allege facts showing the death of insured came within the general liability assumed by the insurer, and to negative, by both allegations and proof, the exceptions, which, under the terms of the

double indemnity agreement, exempted the defendant from liability. We are compelled to sustain these assignments and propositions. The double indemnity agreement is quite lengthy. It covers some four pages in the statement of facts. The plaintiff did not set out the double indemnity agreement in the petition either verbatim or in substance. Other than the caption or introductory portion of the double indemnity agreement, the plaintiff set out in her petition only this brief excerpt therefrom: "That *subject to the conditions herein contained* the association in addition to the face amount payable under the certificate to which this supplementary contract is attached, will pay to the beneficiary under said certificate the sum of one thousand dollars upon receipt and approval of due proof that the death of the member occurred in consequence of bodily injury external, violent, and accidental means, etc." (Italics ours.)

Here follows twenty or more exceptions, exempting the defendant from liability. To quote or enumerate all of these twenty or more exceptions would unduly lengthen this opinion. To be sure, a number of the conditions or exceptions, exempting the defendant from liability, have little or no application to the facts in this case, but a number are material. For example, the double indemnity agreement expressly exempted the defendant from liability for accidental death of the member unless "there is a visible contusion or wound on the exterior of the body." There is proof in the record that there was a wound on the back of the insured's head, but there is no proper pleading to support this proof. The double indemnity agreement also provided: "This benefit does not cover * * * self-destruction * * * death caused directly or indirectly, wholly or in part, by war, riot, or insurrection, or any act incident thereto * * * death resulting from any violation of law, or from injury intentionally inflicted by another * * * if the certificate shall have become paid up for any reduced amount, or while it is continued in force under the extended protection provision or upon the allowance of any disability benefit thereunder * * *."

■■ These are only a few of the exceptions, set out in the double indemnity certificate, exempting the defendant from liability. No attempt was made by the plaintiff to negative these exceptions by either allegations or proof. The plaintiff's petition affirmatively alleged that the double indemnity certificate was issued "subject to the conditions therein stated", without stating the "conditions" and without alleging or proving that said "conditions" had been complied with. This is tantamount to suing on a contract and affirmatively alleging that it is subject to certain "conditions", without alleging the "conditions", and without offering proof that the plaintiff had met the "conditions." It is now the settled law of Texas that in a case of this kind the burden rests upon the plaintiff to allege and prove that the death of the insured was by accident and did not come within the exceptions named in the double indemnity agreement. In order to sustain a judgment based on such a certificate or policy, the plaintiff must negative, by allegations and proof, the exceptions, which, under the terms of the policy, specifically exempt the defendant from liability. It appears from this record that the plaintiff, having failed to make such allegations, supported by proof, that the death of Harry M. Smauley came within the general liability assumed by the insurance association, and that his death did not come within the excepted causes stated in the policy, did not meet the burden placed upon her. The following decisions by the Supreme Court, we think, foreclose any doubt on this proposition: International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040; Washington Fidelity National Ins. Co. v. Williams Tex.Com.App. 49 S.W.2d 1093; International Travelers Ass'n v. Marshall, 131 Tex. 258, 114 S.W. 2d 851; Pelican Insurance Co. v. Troy Co-op. Ass'n, 77 Tex. 225, 13 S.W. 980; Phoenix Insurance Co. v. Boren, 83 Tex. 97, 18 S.W. 484.

Since we are compelled to reverse the judgment because of the failure of the plaintiff to negative the exceptions in the policy by both allegations and proof, it is not deemed necessary to consider the other assignments of error, except those complaining of matters which probably may arise on another trial.

■■ The defendant contends the acceptance and endorsement, by the plaintiff, of the $997.30 check, issued by the defendant in payment of the life benefit, with the release printed on the back thereof, constituted an accord and satisfaction and release of all claims and demands between

the parties growing out of said certificate of insurance. The check in question had the following release printed on its back:

"In consideration of the check on the reverse side hereof, I the undersigned payee, hereby acknowledge receipt of payment in full of all benefits due or arising under the certificate described in said check and accept the same in full of all demands against the Woodmen of the World Life Insurance Society. My endorsement of said check is an acknowledgment of this receipt.

"Original payee must endorse here
(Signed) Viola M. Smauley."

The $997.30 represented by the check in question was the death benefit paid by the defendant to the plaintiff under the certificate of insurance issued on the life of her deceased husband, and had no connection with the double indemnity agreement, which latter became an additional liability and due and payable only in the event of the accidental death of the insured within the terms and conditions of said double indemnity agreement. There was no bona fide dispute between the litigants over the $997.30 which was paid. The $997.30 was due and owing to the plaintiff by the defendant under the death benefit certificate. In paying this· claim the defendant did nothing more than what it contracted to do and what it was legally bound to do. The defendant disputed its liability only under the double indemnity agreement. The payment of an undisputed item, which is fully liquidated and admittedly due and owing, will not constitute a consideration for the release of a disputed item between the same parties. Business Men's Assurance Co. v. Bradley, Tex.Civ.App., 275 S.W. 622; National Mutual Benefit Ass'n v. Butler, Tex. Civ.App., 72 S.W.2d 659; Silvers Box Corporation v. Boynton Lumber Co., Tex.Civ. App., 297 S.W. 1059; Home Benevolent Society v. Keeter, Tex.Civ.App., 82 S.W. 2d 1084; Chicago Fraternal Life Ins. Co. v. Herring, Tex.Civ.App., 104 S.W.2d 901. Defendant's plea of accord and satisfaction and release of liability is without merit, and unless the facts on this phase of the case are materially different upon another trial, it should be eliminated from the pleadings.

■ The defendant, in its sixth and seventh propositions, complains of the action of the trial court in overruling exceptions to plaintiff's petition as to certain representations, advices, agreements, and alleged fraudulent acts on the part of L. E. Alvis, clerk of the local camp of defendant, and defendant's eighth proposition complains of the admission of certain testimony of the plaintiff, over objection, as to said alleged agreements, representations, advices, and alleged fraudulent acts of the local camp clerk.

Plaintiff alleged that Alvis was clerk of the local camp of defendant and was its agent, to collect dues, remit same to the home office, deliver policies to the members, to keep the records of the local camp, "and said L. E. Alvis was in all intents and purposes the agent of the defendant in the furtherance of the defendant's insurance plan of insuring the members of said local W. O. W. Camp and local organization at the town of Roby, in Fisher County, Texas." Based on these limited allegations of agency, the plaintiff offered certain testimony to the effect that Alvis had made certain representations and agreements with plaintiff concerning the payment of the double indemnity claim.

The plaintiff, over the strenuous objection of the defendant, testified that prior to cashing the $997.30 check she went to see Alvis, clerk of the local camp, and asked him about the additional $1,000 provided for in the double indemnity provision of the certificate; and that Alvis told her that the other $1,000 would probably come in a separate check. She testified: "He (Alvis) figured that the checks would come separately; that I would get the other one later; that's what he thought, and that's what I thought." Also, over objection, she was permitted to testify that Alvis told her that "he thought it would be all right to cash it and to go ahead"; and that she relied on what Alvis told her. The allegations in the plaintiff's petition that Alvis was the clerk of the local camp with authority to collect dues, remit same to the home office, deliver policies to the members, and keep the records of the local camp are not sufficient to show general agency with the authority to bind the defendant on matters pertaining to payment of death claims. This testimony tends to impeach the certificate itself, which was introduced in evidence by the plaintiff as follows: "No camp or officer thereof, nor any officer, employee, or agent of the sovereign camp has authority to waive any of the conditions of this beneficiary certificate or of the constitution, laws, and by-laws of this association." Moreover, such statements, advices, and representations, if made by

Alvis, were made subsequent to the issuance and delivery of the $997.30 check and were not shown to have been made with the knowledge of the defendant. At best, we think, such statements, advices, and representations, if made, were mere expressions of opinion on the part of the local clerk, and not shown to be binding on the defendant. Great National Life Ins. Co. v. Gafford, Tex.Civ.App., 108 S.W.2d 917; Masonic Grand Chapter, Order of Eastern Star v. Perdue, Tex.Civ.App., 120 S.W.2d 466; Phipps v. American National Ins. Co., Tex.Civ.App., 116 S.W.2d 800, 801; Panhandle & S. F. Ry. Co. v. O'Neal, Tex.Civ. App., 119 S.W.2d 1077. Nor do we think that the plaintiff's allegations of fraud and alleged "overreaching" on the part of Alvis are sufficient to warrant the introduction of evidence or the submission of an issue to the jury. In the present condition of the plaintiff's pleadings, the admission of the evidence by the plaintiff to the effect that Alvis thought that the "checks would probably come separately" is subject to the objection urged by the defendant.

██ The plaintiff sought and recovered 12 per cent damages and reasonable attorney's fees in the sum of $300. The plaintiff alleged in her amended petition that she made "demand upon the defendant for the amount due her under the double indemnity benefit certificate more than 30 days before the filing of this suit." Evidently the plaintiff rested her claim for reasonable attorney's fees and 12 per cent penalty under Art. 4736, R.S., Vernon's Ann.Civ.St. art. 4736, which article provides that when a loss occurs and an insurance company is liable therefor and fails to pay same "within thirty days after demand therefor", such company shall be liable for 12 per cent damages and reasonable attorney's fees. However, Art. 4736 does not apply to a fraternal benefit society, such as defendant. Art. 4831a, Vernon's Ann.Civ.St.; Woodmen of the World Life Ins. Soc. v. Sosebee, Tex.Civ.App., 144 S.W.2d 308, 313; Sov. Camp, W. O. W. v. Downer, Tex.Civ.App., 241 S.W. 228; Thetford v. Modern Woodmen of America, Tex.Civ.App., 273 S.W. 666. A fraternal benefit society, such as defendant, may be liable for 12 per cent damages and reasonable attorney's fees under Art. 4831a, Vernon's Ann.Civ.St., for failure to pay a loss "within sixty (60) days after the demand therefor." Sov. Camp, W. O. W. v. Helm, Tex.Civ.App., 94 S.W.2d 521. Of course, more than 30 days may be more than 60 days, and may be less. Article 4736, the 30 day statute, was enacted under the general insurance laws, and is applicable to the kind of insurance companies designated therein, and Art. 4831a, the 60 day statute, is applicable to fraternal benefit societies, such as defendant. Both statutes are highly penal and the terms thereof must be strictly complied with in order to recover damages and attorney's fees. Sovereign Camp W. O. W. v. Gomez, Tex.Civ.App., 129 S.W.2d 784; W. O. W. v. Sosebee, supra.

The record shows that plaintiff wrote the defendant on January 20, 1939, "in reference" to her claim. This letter was not offered in evidence, and neither was its contents. The defendant's reply letter dated January 26, 1939, was introduced in evidence in which defendant acknowledged receipt of plaintiff's letter "under date of January 20 in reference to claim for double indemnity", and then the letter proceeded to explain why, under defendant's theory, it was not liable under the double indemnity agreement.

██ As a condition precedent to the right to recover 12 per cent damages and reasonable attorney's fees under Art. 4831a a "demand" must be made for 60 days before the filing of the petition upon which the case is tried. Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 404, 109 S.W. 2d 470, 472, 115 A.L.R. 1301.

██ A letter written by a claimant to an insurance company "in reference" to a claim for insurance is not a "demand" under the statute sufficient to justify the recovery of penal damages and attorney's fees. National Life Insurance Co. v. Mouton, 113 Tex. 224, 228, 252 S.W. 1040, 1041. In this case the Supreme Court said: "A claimant under a policy of life insurance, in order to recover the damages and attorney's fees provided in such article, is required to make a specific demand for the loss insured against by such policy. The mere filing of a suit to recover on a policy is not a demand within the meaning of said article. It is, however, not necessary to the validity of such a demand that it be made before the institution of a suit, provided the plaintiff, after the expiration of thirty days [60 days under Art. 4831a] therefrom as specified in said article, by proper averment, sets up such demand by amended petition. Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S.W.

**614**

406; Security [Trust & Life Ins.] Co. v. Hallum, [32 Tex.Civ.App. 134] 73 S.W. 554 (writ refused)."

Also, see Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 525, 131 S.W. 406; First Texas Prudential Ins. Co. v. Long, Tex. Com.App., 46 S.W.2d 297; American Nat. Life Ins. Co. v. Park, Tex.Civ.App., 55 S. W.2d 1088, 1091, writ refused; Rio Grande Nat. Life Ins. Co. v. Bailey, 153 S.W.2d 498 (opinion by this court).

■ If, upon another trial, the plaintiff seeks to recover damages and reasonable attorney's fees under Art. 4831a a specific demand for payment of the claim for at least 60 days should be alleged and proved under an amended petition.

■ The plaintiff, Viola M. Smauley, instituted this suit while she was a feme sole. However, before the case was tried she married W. O. Brown. By additional pleadings Brown was made a party plaintiff pro forma, although the style of the case was not changed. The action was prosecuted to judgment in the name of the original plaintiff, and no mention was made in the pleadings of her husband, except he was made a formal party. The prayer is, "Wherefore, plaintiff prays that upon final hearing hereof that she have a judgment against the defendant * * *." Also, the judgment runs in favor of the original plaintiff alone, and no disposition was made of Brown therein. While this point was not briefed by either party, we are constrained to believe that it presents fundamental error. Article 1983, R.C.S., provides: "The husband may sue either alone or jointly with his wife for the recovery of the separate property of the wife; and, in case he fails or neglects so to do, she may sue alone by authority of the court."

Unquestionably, the cause of action in this case was the separate property of the original plaintiff, Viola M. Smauley, but having married before the case was tried, her husband was a necessary party, in absence of allegations and proof that he declined to join her in the suit as provided by Art. 1983. It is not sufficient, we think, to merely make him a party plaintiff pro forma and not dispose of him in the judgment. When a feme sole institutes a suit and subsequently marries before the case is tried, the suit will not abate under Art. 2084, but the husband is a necessary party plaintiff, in absence of allegations and proof that the husband declined to join his wife in the action. St. Louis Southwestern Ry Co. v. Wright, 33 Tex.Civ.App. 80, 75 S.W. 565; Dixie Motor Coach Corp. v. Shivers, Tex.Civ.App., 131 S.W.2d 677, and numerous cases therein cited. However, we do not reverse the judgment on this point. In view of the seriousness of the question we merely desire to call it to the attention of the parties upon another trial.

The other propositions complained of in defendant's brief will probably not arise on another trial, and they are, therefore, overruled. Moreover, they are without merit.

The judgment is reversed and the cause remanded.

CHILDERS, Special Chief Justice, and PEARSON, Special Associate Justice, sitting in the place of LESLIE, C. J., and FUNDERBURK, A. J. disqualified and not sitting.