## SOUTHLAND LIFE INS. CO. v. BROWN.

### No. 2001.

Court of Civil Appeals of Texas. Waco.

Nov. 10, 1938.

Rehearing Denied Dec. 1, 1938.

654

Malone, Lipscomb, White & Seay and Geo. E. Seay, all of Dallas, for appellant.

Ford & Killough, of Dallas, for appellee.

ALEXANDER, Justice.

This suit was brought by Mrs. Katie L. Brown against Southland Life Insurance Company to recover on a life insurance policy issued on the life of D. V. Brown and payable to plaintiff, mother of the insured. The insurance company defended on the ground that the insured had committed suicide in violation of the terms of the policy. The jury returned a verdict in favor of plaintiff and defendant appealed.

Appellant challenges the sufficiency of the evidence to support the verdict and contends that the evidence conclusively establishes that the insured committed suicide. The evidence establishes that the insured took out the policy in September 1933, and died on March 3, 1934. He was twenty-seven years of age, employed, in good health, showed no signs of worry or melancholy, and had never threatened to take his own life. He was engaged to marry a young lady by the name of Miss Thelma Lively at 7:30 P. M. on the day of his death, and had furnished an apartment to be occupied after the wedding. He had previously had fights with one or more young men who had attempted to keep company with Miss Lively. On the day he was to be married he borrowed a pistol from a' friend, telling him that he was to be married that day and that he had had trouble with some young men on former occasions and might need the gun. That afternoon, about 4 o'clock P. M., he went to the house of his fiancee. While he was seated in the living room with the family, Miss Lively was called to the telephone. The insured arose, jerked the telephone out of Miss Lively's hand, threw it to the floor, and walked out and got into his automobile. In a moment the gun which he had in his automobile was fired and he was found dead with a gun shot wound in his heart.

█ The appellant relies largely on the certificate of death from the Bureau of Vital Statistics and the testimony of Mrs. Lively to prove that the insured intentionally took his own life. The death certificate shows that the insured committed suicide, and the statute, R.S. art. 4477, rule 54a, sec. 21, Vernon's Ann.Civ.St. art. 4477, rule 54a, § 21, makes properly certified copies of such certificates prima facie evidence of the facts therein stated. However, the presumption in favor of the truth of the facts therein recited can be no stronger than the evidence authorizing the making of such statement in the original certificate. The jury was not required to accept the recitations contained in such certificate as conclusive proof of the fact that the insured committed suicide.

█ Mrs. Lively, the mother of Miss Thelma Lively, was a witness for the insurance company. She testified that when the insured walked out of the room she said to him that she was sorry he was feeling so bad and followed him out to the automobile "to console him;" that when she got within about four feet of the right side of the automobile she saw the insured, while seated behind the steering wheel, reach his right hand into the pocket of the left door, pull out the gun, point it at his breast and fire it, and that his body slumped in the seat, and he died. Mrs. Lively's evidence presents a very strong case of intentional killing. However, the credibility of her testimony is impeached in some important particulars. Mrs. Byford, appellee's daughter, testified that she talked to Mrs. Lively shortly after the death of the insured, and that Mrs. Lively told her that she did not see the insured shoot himself, but she knew he did it. W. M. Thomas testified that

Mrs. Lively made a like statement to him. Mrs. Bryant, a daughter of Mrs. Lively, who was in the house at the time of the killing, testified that Mrs. Lively was walking off of the porch when the shot was fired. Both she and Miss Thelma Lively testified that their mother had never told them she saw the insured shoot himself. Ed Nash, a colored man, who worked across the street from the scene of the killing, testified that he was looking toward the automobile at the time the shot was fired; that there was no one near the car at that time, and that he saw Mrs. Lively run out of the house shortly after the shooting. The evidence does not make it clear whether the insured went to his automobile and got the gun for the purpose of killing himself while suffering from a fit of temper, or whether he thought one of his rivals was seeking to communicate with his fiancee by telephone and had gone to his automobile to get the gun for the purpose of finding and making an attack on his rival. The burden of proving suicide was on the insurance company. Mrs. Lively's credibility and the weight to be given to her testimony was for the jury. In view of the impeaching testimony above referred to and the very strong presumption against suicide, we cannot say that the evidence did not raise a question of fact for the jury. Home Benefit Ass'n v. Briggs, Tex.Civ.App., 61 S.W.2d 867, 869, par. 7, and authorities there cited; United Fidelity Life Ins. Co. v. Adair, Tex.Civ.App., 29 S.W.2d 940.

■ On March 12th, after the insured had been killed on March 3d, the insurance company mailed to Mrs. Brown a check for $9.18, that being the amount of premiums that had been paid on the policy, in full settlement of the company's liability under the policy. Mrs. Brown endorsed and cashed the check, and in doing so signed a release on the back of the check, releasing the insurance company from further liability. The insurance company plead the release in settlement of all liability under the policy. The testimony showed that Mrs. Brown was prostrated with grief and shock from the loss of her son and was confined to her bed under the treatment of a doctor for several weeks after his death, during which time she did not fully understand what she was doing. She denied any recollection of having endorsed the check. The jury found that she did not have sufficient mental capacity to understand the effect of her act at the time she endorsed the check and signed the release. We think the evidence was sufficient to support the jury's finding, and consequently the trial court did not err in refusing to sustain appellant's plea of settlement.

We have considered all other assignments of error and find no reversible error.

The judgment of the trial court is affirmed.

GEORGE, J., took no part in the consideration and disposition of this case.