**BLAIR et al. v. SMYLIE.**

**No. 11263.**

Court of Civil Appeals of Texas. Galveston.

Oct. 16, 1941.

Rehearing Denied Nov. 13, 1941.

W. P. Hamblen, W. P. Hamblen, Jr., and Philip Tharp, all of Houston, for appellants.

A. Milton Vance, Lewis Fisher, and Sam Holliday, all of Houston, for appellee.

GRAVES, Justice.

This much of the statement of the nature and result of the suit—considered to be substantially correct—is taken from the appellee's brief:

"This was a suit by W. R. Smylie against the executors of the estate of Dr. J. M. Blair, deceased, on two promissory notes, each dated February 20, 1932, each due five years after date and bearing interest at six per cent per annum from date until paid; Note No. 1 being in the principal amount of $7,000.00 and Note No. 2 being in the principal amount of $6,500.00. The pleaded defenses were (1) that the notes were without consideration, (2) that the consideration for the notes was illegal, (3) that the notes were forged.

"By supplemental petition plaintiff pleaded the agreement regarding certain bonds which is more particularly described hereinbelow, pleaded the estoppel of Dr. Blair's executors to deny the title of Smylie to the bonds and pleaded that Smylie acquired title to the bonds by gift and by the two year statute of limitation.

"No effort was made by the defendants to substantiate the sworn plea of forgery. * * *

"On February 13, 1932, Dr. Blair and Mr. Smylie entered into a written contract the execution of which each acknowledged before B. W. Lakenmacher, a notary, who was a vice-president of Houston National Bank. It recited that Smylie owned bearer Liberty Bonds of the face value of $13,500.-00 and bearing 4¾% interest, and Blair owned certain lands in Terry County, Texas; that Blair was in a position to make a loan using the bonds as security and 'has arranged with the First Party to use the above described bonds in securing said loan under the terms hereinafter set forth'; it provided that Blair should execute and deliver to Smylie his 6% notes for $13,-500.00, due five years after date, secured by a deed of trust on the Terry County lands, and Smylie should deliver to Blair the bonds and permit their use as collateral by Blair for a period not to exceed five years. Smylie was to retain the interest-coupons and as he cashed them was to credit the proceeds to interest accruing on the notes.

"The contract further provided:

"'Fourth: On or before Five (5) years after date of said notes, the Second Party agrees to return to the First Party the government bonds and at such time as the bonds are returned, to pay to the First Party a sum of money equivalent to One and Three Quarters (-1-¾%) per cent from date of notes until date returned.

"'Fifth: At such time as the government bonds are returned to the First Party, the notes, together with the deed of

trust herein provided, shall become null and void and without force and First Party agrees to release the Second Party from the obligations therein assumed.

"'Sixth: If for any reason Second Party fails to return the government bonds to the First Party on or before maturity date of notes, First Party has the right to proceed to collect the amount due under the terms of the notes and deed of trust herein provided.

"'Seventh: The Second Party agrees and binds himself, his heirs, administrators, and assigns, to fully indemnify and save harmless the First Party against any and all loss of every nature whatsoever, including suits, court costs, and attorney's fees, as a result of the use of the government bonds' for collateral as provided in this agreement.'

"Pursuant to this contract Smylie delivered to Blair the described negotiable bearer bonds of the face value of $13,500.00. He did not detach the coupons as provided by the contract, but delivered the bonds with the coupons attached. Blair delivered to Smylie his notes for $13,500.00 as provided by the contract, and the deed of trust on the Terry County land. By agreement, Smylie did not record the deed of trust.

"Blair cashed the bonds, thus rendering it impossible for him to return them to Smylie. They were redeemed by the U. S. Treasury. There is no evidence that any third party ever asserted any claim to them. Blair paid Smylie interest upon the notes, the last payment being $700.00 on August 28, 1936.

"The notes matured February 20, 1937. Smylie called at Blair's home to collect them, but Blair was seriously ill and Smylie was unable to see him. Blair died April 2, 1937.

"Just prior to Dr. Blair's death, to-wit: on January 2, 1937, Dr. Blair conveyed the Terry County lands to his brother, Guy L. Blair, for a recited consideration of $4,000.00 cash. Guy Blair testified that the actual consideration was his cancellation of a debt of $4,273.00 previously owing him by Dr. Blair. On February 15, 1937, Guy Blair sold the land to Joe Johnson for $12,000.00, all of which Johnson had paid at the time of the trial. Since Johnson was thus an innocent purchaser, Smylie did not seek to foreclose the deed of trust in this suit. When Smylie learned, after Dr. Blair's death, of the conveyance of this land, he recorded his deed of trust, on advice of counsel.

"After Blair's death Smylie caused the notes to be presented to the executors for payment, and same being refused, brought this suit.

"Trial was to a jury, who found that a preponderance of the evidence showed:

"1. The bonds were delivered to Smylie by one Ferrara on June 22, 1926.

"2. When he delivered them, Ferrara told Smylie that the bonds were to belong to Smylie if Ferrara did not return for them.

"3. The bonds, when so delivered, were stolen property.

"4. Smylie did not know the bonds were stolen property.

"5. Ferrara never returned to demand the return of the bonds.

"6. A reasonable time within which to demand the return of the bonds elapsed.

"7. Dr. Blair executed the contract with Smylie dated February 13, 1932.

"8. Dr. Blair executed the two notes sued on.

"9. Smylie delivered the bonds to Dr. Blair after execution of the contract.

"10. Dr. Blair did not know the bonds were stolen at the time they were delivered to him.

"Upon receipt of this verdict the defendants moved the court to enter judgment in their favor. They did not move for judgment notwithstanding the verdict.

"The plaintiff, upon receipt of the verdict, filed a motion for judgment non obstante, on the theory that the finding of the jury (special Issue No. 3) that the bonds were stolen, was not supported by any evidence. This motion was overruled, to which plaintiff excepted, and to this action of the trial court appellee has cross-assigned error here. Subject to the said motion, the plaintiff filed a motion for judgment on the verdict, which the trial court granted."

Appellants' sole propositions for reversal, in his verbis, are these:

"1. The jury having found that the bonds which plaintiff claims he delivered to J. M. Blair were stolen property, plaintiff could not recover therefor.

"2. The bonds, being stolen property, even if delivered to J. M. Blair, could not

constitute consideration for the notes sued on.

"The undisputed proof, by plaintiff himself, being that plaintiff believed the bonds were stolen at the time he received them from Ferrara, and that he concealed the bonds until the alleged delivery to Blair, there could be no valid or valuable consideration for the notes sued on.

"3. The undisputed proof by plaintiff himself being that he received the bonds from Ferrara, who was admittedly fleeing from the law and who stated that he had to get rid of the bonds, the appearance and actions of Ferrara being that of a common tramp or bum, and the inadequacy of the amount given by plaintiff to Ferrara ($104.-00 for $13,500.00 of United States Bonds), the fear of plaintiff to cash the interest coupons on the bonds, and the concealment of the bonds, are such evidence of guilty possession of the bonds, both by Ferrara and Smylie, that Smylie should not be permitted to profit thereby and recover judgment herein.

"4. It is contrary to public policy that Smylie, under the admitted facts, should be permitted to profit by his illegal acts, and fraud.

"5. Public policy prohibits the encouragement of theft and the concealment and disposition of stolen property, as the admitted facts show was done in this case.

"6. Plaintiff's proof showing that his purpose in making the alleged trade with Blair was so that he could get value on property which he believed was stolen so taints the transaction with illegality as to bar any recovery by plaintiff.

"7. The judgment of the trial court under the facts in this case is contrary to law, good morals, public policy and common honesty.

"8. A contract based on an agreement to dispose of property which both parties thought was stolen, is contrary to public policy and void.

"9. There was no issue of fact to be submitted to the jury, plaintiff's own testimony being that he thought the bonds were stolen, he thought Ferrara, from whom he obtained the bonds, was a guilty possessor thereof, and his purpose in making a deal with Blair was to get value on property which he thought was stolen and which he had concealed.

"10. The court should have submitted the issue of illegal contract."

In the state of this record, none of these presentments can be sustained; the rationale of them all plainly reflects their underlying theory upon the whole case—indeed, the appellants themselves so say in their brief—to be that a finding by the jury simply that these bonds were stolen property, as was made under special issue No. 3, constituted a complete defense to the suit on these two notes, regardless of the other attending circumstances. Consequently, they requested the submission of no issues by the trial court beyond those that were submitted; they did not except to the court's charge for failure to submit any issue; they did not make the failure to submit an issue a ground of their motion for new trial; they have not assigned error in this court to the failure of the trial court to submit any special issues; and, finally, they have not filed on the appeal any assignments by which they claim that any one of the quoted findings of the jury is without support in the evidence.

As against that position, as so grounded, the opposing contentions of the appellee are by him succinctly summarized as follows: "(1) There was no evidence that the bonds were stolen, (2) it is immaterial to the rights of the parties, even if they were in fact at some time in their history stolen, since there is no finding of facts which would make their possession by Ferrara, Smylie, or Blair, an illegal possession, (3) since Dr. Blair was a bailee of the bonds, his personal representatives are not in a position to deny the title of Smylie, the bailor, to the bailed property."

This court agrees with that answering position of the appellee, with the exception that it does not pass upon the first recitation of there being no evidence that the bonds were stolen, since it deems that an immaterial issue, hence an inconclusive finding, under other established facts of the case; presumably, from the judgment it rendered in favor of the appellee, the trial court also deemed the finding under that issue a non-controlling one.

■ Since appellants so stake their whole case upon their theory that a finding by the jury that the bonds had been stolen property would be a complete defense against the notes, regardless of other attending conditions, and, in reliance upon it, requested the submission of no other theory to the jury, it seems inept to

yet contend upon the appeal that further unspecified issues of fact, seeking to elicit in some way whether or not the contract between Smylie and Blair had been an illegal one, should have been given. Plainly they waived any such additional issues. R.S. Article 2190, Vernon's Ann. Civ.St. art. 2190; Wichita Falls & O. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

■ Neither are they in position to complain of any of the facts found under the other issues submitted, because the record is devoid of any objections thereto from them.

This court holds, in the other attending circumstances—aside from the bare finding that the bonds were stolen—which must thus be regarded as the established facts:

■ 1. That the notes sued upon were not shown to be illegal, even if they had been stolen by some one prior to coming into appellee's possession, because neither Smylie nor Blair knew of that fact. 8 Am. Jur. 730; Castleberry v. State, 35 Tex. Cr.R. 382, 33 S.W. 875, 60 Am.St.Rep. 53; 9 C.J. 63; 11 C.J.S., Bonds, § 87, p. 457; 17 C.J.S., Contracts, § 190, p. 545; Day v. Mallard, Tex.Com.App., 228 S.W. 164; Illies v. Fitzgerald, 11 Tex. 417; Ireland v. Craggs, 5 Cir., 56 F.2d 785; Murray v. Lardner, 2 Wall. 110, 17 L.Ed. 857; Missouri, K. & T. Ry. Co. v. Carter, 95 Tex. 461, 476, 68 S.W. 159; P.C.1925, Art. 1430; State of Montana v. Gateway Mortuaries, Inc., 87 Mont. 225, 287 P. 156, 68 A.L.R. 1512; St. Regis Candies v. Hovas, 117 Tex. 313, 3 S.W.2d 429, 433; Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112, 83 A.L.R. 1168; 36 Tex.Jur. 342; 10 Tex.Jur. 191; Williston, "The Law of Contracts", Sec. 1631.

■ 2. That the contract between Smylie and Blair was not shown to have been void for illegality, although the bonds may have been previously stolen by some one, because, in the total absence of any evidence shown to the contrary, the presumptions of law were to the effect that Ferrara's possession of them was lawful and carried with it the right to so dispose of them to the appellee. Castleberry v. State, 35 Tex.Cr.R. 382, 33 S.W. 875, 60 Am. St.Rep. 53; 9 C.J. 121; 11 C.J.S., Bonds, § 118; 9 C.J. 63; 11 C.J.S., Bonds, § 87, p. 457; Marquez v. State, 126 Tex.Cr.R. 132, 70 S.W.2d 426; 34 Tex.Jur. 696; 41 Tex.Jur. 215; Underhill, Criminal Evidence, Sec. 299.

■■ 3. Since appellants, as indicated supra, neither sought nor secured findings of fact showing just what the character of Ferrara's title and possession of the bonds was, as to which the burden was upon them, it should also be presumed, if necessary to support this judgment on the verdict, that the trial court additionally found Ferrara not to have stolen the bonds himself, but to have acquired them, at all events, under such circumstances as to justify the presumption of his legal title and possession thereof.

■ 4. That, in what must so be assumed to be the established facts, Dr. Blair should be held to have been a bailee of the bonds in question, hence appellants, as his personal representatives and being in no better position than he himself would have been, were, as a matter of law, estopped to deny the title thereto to his bailor, the appellee herein. 43 A.L.R. 149, note and authorities therein cited; 6 Am. Jur. 217ff; City National Bank v. Conley, Tex.Civ.App., 228 S.W. 972; Callen v. Evans, Tex.Civ.App., 120 S.W. 543; Grooms v. Rust, 27 Tex. 231; Loya v. Bowen, Tex.Civ.App., 215 S.W. 474; Ed Maher, Inc. v. Morris, Tex.Civ.App., 67 S.W.2d 340; 5 Tex.Jur. 1037; Texas Standard Cotton Oil Co. v. National Cotton-Oil Company, Tex.Civ.App., 40 S.W. 159.

■ 5. That, under the other holdings herein made, the appellee's cross-assignment, in effect, claiming the finding that the bonds were stolen property when delivered by Ferrara to Smylie to be without evidence to support it, raises a mere immaterial and inconclusive issue, hence should be disregarded as such.

■ 6. That appellants, because of the procedural omissions pointed out supra—that is, having failed to request the submission of any other issues in support of their plea of an illegal contract, and having failed to even object to the charge as given for its failure to submit any such issue—thereby effectively waived any such claim.

These conclusions require an affirmance of the appealed-from judgment; it will be so ordered.

Affirmed.