## AMERICAN CASUALTY & LIFE CO. v. MORRISON.

### No. 2247.

Court of Civil Appeals of Texas. Eastland.

Feb. 20, 1942.

Rehearing Denied April 3, 1942.

Chaney, DeShazo & Hyde, of Dallas, for appellant.

Smith & Smith, of Anson, for appellee.

LESLIE, Chief Justice.

Nora Morrison instituted this suit against the American Casualty and Life Company (a state wide mutual) on an insurance policy issued by that company on the life of Kate Brown. Except as an alleged creditor, Morrison had no insurable interest in her life.

The defendant answered by general demurrer, general denial, etc. The case was tried before the court and jury, and, upon the jury's verdict, the court entered judgment in favor of Morrison for the sum of $400, costs, etc. The company appeals.

The defendant requested the court to instruct a verdict in its favor, to grant it a judgment notwithstanding the verdict, and to grant it a judgment on the verdict. Propositions challenging the action of the trial court in refusing to sustain said motions will be first considered. By these propositions the appellant contends that there is no evidence that Kate Brown's death was due solely to accidental means. Briefly, the appellant contends that the pol-

icy provided payment only in case of death caused solely by accidental means and that there is no evidence in the record to support recovery on any such theory.

Appellee Morrison alleged in his petition that the insured Kate Brown died by accidental means in that on November 25, 1940, she accidentally slipped on the paved public highway while the same was wet, frozen and slick and sustained an accidental injury which resulted in her death on the 9th day of February, 1941. The policy provides:

"* * *

"If the insured shall sustain bodily injuries as described in the insuring clause which injuries shall independently and exclusively of disease and all other causes, * * * result in any of the specific losses named in Section A, the company will pay in lieu of any other indemnity, not to exceed the amounts set out in Section A. * * *

"This policy insures against loss of life, limb, sight or time, resulting directly and independently of all other causes from bodily injuries sustained during any term of this policy through purely accidental means (suicide, sane or insane, is not covered), and against loss of time beginning while this policy is in force and resulting from disease contracted not less than 31 days after date of this policy."

(Many excepted disabilities, etc.)

"* * *

"The indemnity under this policy, fatal or otherwise for any injury or sickness received directly or indirectly as the result of, or that is contributed to by *paralysis,* tuberculosis, *heart diseases,* kidney diseases, *high blood pressure,* cancer, strains, or sprains, arthritis, enteritis, bladder disease (including both gall and urinal bladder) appendicitis, influenza, rheumatism, malaria, diabetes, *epilepsy,* neuritis, goiter, and tumors, shall be payable at fifty percent of the amount otherwise payable and for a period of time not to exceed that allowed for nonconflicting illness." (Italics ours.)

Under the provisions of the policy and the decisions of this State, the burden rested upon plaintiff to plead and prove that the death of Kate Brown resulted from purely accidental means and did not come within the exceptions named in the policy. International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040; International Travelers' Ass'n v. Francis, 119 Tex. 1,

23 S.W.2d 282; Robinson v. Aetna Life Ins. Co., Tex.Com.App., 276 S.W. 900. These authorities clearly state and apply the announced rule of law, and also give a comprehensive discussion of the troublesome term "accidental means." No attempt will be made to add anything thereto. From the numerous decisions and discussions on the subject, it very much appears that "Many words darken speech."

While the appellee alleged insured slipped and fell November 25, 1940, on a public road which was wet and slick and injured her head which produced paralysis which in turn produced her death February 9, 1941, the evidence shows no more than that on said date Kate Brown was found sitting by the side of the road out on the dirt shoulder of the same and that she showed no signs of any bodily injuries, and merely complained of being sick at the stomach and dizzy. No witness testified that he saw her fall.

We will not lengthen this opinion by quotations from the testimony. Suffice it to say, that we have carefully considered the same in the light of the pleadings and the authorities above and we have come to the conclusion that the statement of facts presents no evidence of bodily injury of any kind received by the insured as pleaded by the appellee. There is no evidence that the insured died from bodily injuries received solely by accidental means. Further, if the deceased received bodily injuries there is no evidence or finding that they were caused directly by accidental means.

To enter a judgment in favor of the plaintiff on this record would require the indulgence of a presumption that (1) because the deceased was sitting by the side of the road in a dazed and sickened condition, she fell. (2) On that presumption it would become necessary to presume that her foot slipped on the slick pavement and that she fell as a result thereof. (3) Upon such second presumption, it would have to be presumed that she received bodily injury as a result thereof, and then it would be necessary to further presume that her falling was not due to sickness or ill health. Even then, it would be necessary to indulge a further presumption that she died solely as the result of an injury received from the fall. As said in the authority first cited: "Neither the pleadings nor the proof can be left open to conjecture and guesswork. A presumption of a fact can-

not rest upon a fact presumed." [120 Tex. 67, 35 S.W.2d 1044.]

As above stated, appellee Morrison had no insurable interest in the life of Kate Brown other than that of a creditor. The contention is here made that he was not such creditor. He testified he built a small room on the back of his lot for her convenience and use; made expenditures therefor and retained the structure after she departed for East Texas where she died. He testified he rendered her many services for a considerable period of time while she was at his home. In the latter part of October, 1940, he paid $2 for the insurance policy herein sued on, and sent in $3 premium on January 30, 1941. He testified he was not related to the insured, kept no books or records of his expenditures, and that he could not testify to any certain amount he contributed to her support and welfare during any particular year. He did not undertake to testify to any agreement or contract by virtue of which she obligated herself to pay him for care and services. He testified to no contract by which she obligated herself to pay him house rent, board, etc. His testimony is to the opposite effect.

In addition to the denial of creditor's insurable interest, the company further alleged that it had paid off and settled with Lottie Ross, the only child and heir at law of the deceased, and had her receipt for any sum that might be due her under the terms of the policy. The deposition of Lottie Ross was offered sustaining these allegations and stating that she had been paid the sum of $25 and receipted the company for payment in full. The release was introduced in evidence.

A creditor is uniformly held to have an insurable interest in the life of a debtor. 10 Tex.Law Review, p. 105. In Equitable Life Assur. Soc. v. Hazlewood, 75 Tex. 338, 12 S.W. 621, 626, 7 L.R.A. 217, 16 Am.St.Rep. 893, it was held, "When the insurance is not contracted for by the person whose life is insured, but by a creditor, in his own name, so that there is no party to the contract except himself and the insurer, it becomes immaterial what amount may be contracted for, as no more will be collected than will be ultimately sufficient to discharge his debt and disbursements on the policy, including interest upon both."

To the same effect is Pacific Mut. Life Ins. Co. v. Williams, 79 Tex. 633, 15 S.W. 478; Goldbaum v. Blum, 79 Tex. 638, 15 S. W. 564; Taylor v. Travelers' Ins. Co., 15 Tex.Civ.App. 254, 39 S.W. 185; Border State Life Ins. Co. v. Monk, Tex.Civ.App., 103 S.W.2d 825.

There is no evidence of any contractual relation or debt as between Morrison and deceased, or any amount to which he was entitled upon the basis of quantum meruit. The legal relation of creditor and debtor between these parties should have been shown. No debt or legal obligation was established in terms of law as stated in Barber v. City of East Dallas, 83 Tex. 147, 18 S.W. 438; 21 C.J.S., Creditor, p. 1048, and authorities there cited. In the text cited, discussing the legal significance of creditor, this statement is made: "It commonly signifies one who holds some contractual obligation against another, and is ordinarily used as the antonym or correlative of 'debtor,' involving both a debt and a credit, for, unless there is a debtor, one whose duty it is to pay, and of whom the debt can be demanded, there cannot be a creditor to enforce and compel payment."

Measured by such rule of law, the testimony of the appellee shows he was not a creditor in such sense and, therefore, had no insurable interest in her life.

[7, 8] Further, if it should be assumed for the present that such relation of creditor and debtor existed upon any legal basis so as to give rise to an insurable interest upon the part of plaintiff, then the burden was upon him to show the amount of his debt in order that he might recover that amount and no more by way of indemnity. He himself had no knowledge of any particular amount to which he was entitled, and we are unable to see how a jury or court could legally ascertain from such testimony any amount to which he was entitled as a creditor. He kept no records and his testimony is no more than mere conjecture.

For the reasons assigned, the judgment of the trial court is reversed and here rendered in favor of the appellant.