GREAT AMERICAN LIFE INS. CO. v. DEARING.

No. 11766.

Court of Civil Appeals of Texas. Galveston.

Feb. 14, 1946.

Rehearing Denied March 7, 1946.

Blades, Chiles, Moore, Kennerly & Knight, of Houston, for appellant.

Devereaux Henderson, of Houston, for appellee.

GRAVES, Justice.

This suit was brought by appellee to recover as for double indemnity upon a policy of life insurance issued and delivered by appellant on appellee's husband's life, he having died—by the mutual concession of the parties—as a result of gunshot wounds.

The court submitted what it deemed to be the controlling issues of fact raised by the pleadings and evidence in the case to a jury upon these two issues of fact, both of which were answered in appellee's favor, as therein indicated.

"No. 1. Do you find from a preponderance of the evidence that on the date of the delivery of the policy of insurance made the basis of this suit, the insured, Guy Taylor Dearing, was not in sound health?

"To which the jury answered 'No'.

\*    \*    \*    \*    \*    \*

"No. 3. Do you find that the insured, Guy Taylor Dearing, committed suicide?

"To which the jury answered 'No'."

Judgment was thereupon entered below in favor of the appellee against the appellant, the gist of which was this: "The Court, having considered the verdict of the jury, the stipulations of the parties, and the evidence in the case, and being fully advised in the premises, is of the opinion and so finds that the Plaintiff is entitled to recover, and that judgment should be entered in favor of the Plaintiff and against said Defendants in the sum of one thousand eight hundred thirty ($1,830.00) dollars, as for double-indemnity under the policy of insurance sued upon, together with the sum of $219.60, the penalty thereon of twelve per cent thereof, pursuant to the provisions of Article 4636, of the Revised Civil Statutes of the State of Texas; plus interest amounting to $96.60 on said sum of $1,830.-00, calculated at the rate of six per cent annum from December 1, 1944, to October 15, 1945; plus the additional sum of $350.00 as for attorney's fees, pursuant to the Statutes and the stipulations of the parties."

In this court appellant's controlling points of error are to the effect—despite the quoted findings of court and jury taken together to the contrary—that (1) "The undisputed evidence conclusively shows that the insured, Guy Taylor Dearing, was not in sound health upon the date the policy of insurance sued upon was issued and delivered"; (2) "The undisputed evidence conclusively shows that the deceased, Guy Taylor Dearing, committed suicide, for which there can be no recovery by virtue of Section 17 of the policy of insurance sued upon."

As part of its assigned contention, both below and in this court, that the undisputed evidence conclusively showed the two results it so grounds its appeal upon, appellant further detailed its position by the averment that the criticised judgment and verdict were so against the overwhelming weight and preponderance of the evidence in each particular as to be wholly wrong.

In support of its first contention appellant cites and relies upon these two Texas court decisions, of which it says: "Only two cases have been found arising in our state and specifically dealing with a fact situation involving medical testimony relative to diagnosis and treatment on the date of the issuance and delivery of a policy of insurance. They are Metropolitan Life Insurance Company v. Betz, Galveston, 1907, 44 Tex.Civ.App. 557, 99 S.W. 1140, 1141, and Scharlach v. Pacific Mutual Life Insurance Company, 5 Cir., 1926, 16 F.2d 245, 248."

The two cited decisions were upon analogous facts and made like holdings to the effect that the plaintiffs therein were con-

clusively shown not to have been in good health at the time the policies were delivered, hence had not been entitled to recover under the same provision requiring good health as a condition precedent to the taking effect of the insurance that was contained in the policy here involved; of the earlier and main one of the two, which, as stated, were of the same class, the Betz case, appellant's brief thus declares: "The parallel between the Betz case and the case at bar is so striking that little amplication need be made. The fact that the insured in the Betz case died as a consequence of the disease rendering him in unsound health is of no material importance in our jurisprudence."

■ With much respect, this court must differ with appellant upon both its points of error, and hold that, in its material reaches, this cause was one for the jury as so submitted to it by the court, and that the challenged verdicts of both court and jury thereon were neither without any evidence to support them, nor so against the overwhelming preponderance of the evidence as to be clearly wrong; but that, to the contrary, the pleadings and evidence properly raised as issues of fact the two questions so submitted, and made of them inquiries it was the jury's exclusive province to resolve, hence this court is without authority to set them aside.

It would serve no needful purpose to at much length discuss appellant's quoted construction of the cited Betz opinion by this court, for this among other considerations:

The Betz case is clearly distinguishable on its facts from the one at bar, in that: (1) The policy therein sued upon was a medical policy—that is, the company's doctor had examined the insured on the date it was issued, as distinguished from the situation here, where no such medical examination was made; (2) the insured was shown to have subsequently died from the disease he was found by the examining doctor to have had at the time the policy was issued; (3) the disease Betz was so shown to have died of was Bright's disease, the early stages of which do not affect the healthful appearance of its victims, and, upon which fact alone, this court held that the testimony of plaintiff's witnesses there as to his appearance did not raise an issue as to whether or not he was then suffering from that disease.

The Scharlach case was in effect of the same kind precisely, hence it need not be further specifically discussed.

The case at bar, as indicated, was diametrically different as to the three features permeating appellant's two cited authorities; that is, in this instance there was no medical examination at all had prior to the issuance and delivery of this policy; by mutual insistence of these parties, this deceased did not die from the claimed Pellagra appellant urges he was shown to have been afflicted with at the time the policy was issued, but from gunshot wounds; and, lastly, the alleged Pellagra affection, unlike the Bright's disease of Betz, was undisputedly shown to have been one in which the incipient stages even were always conspicuously shown in the victim's condition and appearance, to such an extent that everybody—that is, the ordinary observer—who knew him could and would have detected from his appearance that he was diseased; wherefore, upon this feature, such being the plain purport of the testimony before the trial court, it is held that the judgment and verdict as applicable to such a state of facts are supported by these authorities, among others: Traders & General Ins. Co. v. Scott, Tex.Civ.App., 189 S.W.2d 633; Universal Life & Accident Ins. Co. v. Nanes, Tex.Civ. App., 92 S.W.2d 473 (error dismissed); Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562; Maryland Cas. Co. v. Hearks, Tex. Sup., 190 S.W.2d 62; Coxson v. Atlanta, 142 Tex. 544, 179 S.W.2d 943; 24 Tex.Jur. 1238; Traders & General Ins. Co. v. Keahey, Tex.Civ.App., 119 S.W.2d 618; National Life & Accident Co. v. Muckelroy, 40 S.W.2d 1115; 19 Tex.Jur. 354; 24 Tex.Jur. 1266; National Life & Accident Ins. Co. v. Taree, Tex.Civ.App., 8 S.W.2d 291; (error refused); McVeigh v. International Travelers Assur. Co., Tex.Civ.App., 101 S.W.2d 644 (error dismissed); Thies v. Mutual Life Ins. Co. of Kentucky, 13 Tex.Civ.App. 280, 35 S.W. 676; Art. 5044, R.C.S.; Texas Rules of Civil Procedure No. 299; Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; Blair v. Smylie, Tex.Civ. App., 155 S.W.2d 958; 24 Tex.Jur. 910; North American Accident Ins. Co. v. Trenton, Tex.Civ.App., 99 S.W. 740, (error refused); 24 Tex.Jur. 704-5; Jeter v. State, Tex.Civ.App., 171 S.W.2d 192; National Life & Accident Ins. Co. of Nashville, Tenn. v. Kinney, Tex.Civ.App., 282 S.W. 633; Perry v. Citizens Life Ins. Co., Tex.

Civ.App., 163 S.W.2d 743; Spence v. National Life, Tex.Civ.App., 59 S.W.2d 212, 214, (error refused).

The same overall conclusion, as indicated, must be stated as to appellant's second defense, that the appellee wholly failed to adduce evidence sufficient to make a jury question out of whether or not her deceased husband had committed suicide; especially so, since almost the sole basis for that position is thus stated in its brief; "This court's attention is respectfully directed to the undisputed facts that this man was found standing erect with a bullet hole in his right temple and another slightly behind his left eye. A bullet from a .22 calibre rifle passed horizontally through his head, and slightly forward from the place it entered. These facts satisfy the criminal test of circumstantial evidence—they absolutely negate any other hypothesis or conclusion."

It adds, as a deduction from that, this: "Simply stated, appellant's position may be pitched on the sole premise that the evidence unquestionably and conclusively shows that Mr. Dearing committed suicide."

■■ Concededly by appellee, since she sued upon the accidental benefit provision of the policy in suit (Section 15 thereof), as is well settled, she had the burden of establishing that the case was not one of suicide, which, as recited supra, she succeeded in doing to the satisfaction of both the trial court and the jury. This court holds, as against the position of the appellant, that she did at least produce enough evidence against the appellant's suicide theory as brought the determination of that question within the province of the jury.

■ In the first place, it is also well settled, as appellant expressly concedes, that there is a very strong presumption in the law against the commission of suicide, in which, in an instance where one shoots himself, as the appellee's husband is conceded by both parties to have done, it is assumed that it was an accident rather than an intentional act; and further, even that the deceased was normal and without suicidal intent. Southland Life Ins. Co. v. Brown, Tex.Civ.App., 121 S.W.2d 653, error dismissed; Brockman v. J. Weingarten, Tex. Civ.App., 115 S.W.2d 753, affirmed 134 Tex. 451, 135 S.W.2d 698; 39 Tex.Jur. in footnote at page 853; Malley v. Union, Tex. Com.App., 12 S.W.2d 1002.

■ Not only so, but where, as presented by appellant in this instance, the contention is that the deceased was shown to have committed suicide as a matter of law, as against a jury's findings that he did not do so, the evidence as a whole must be viewed in the light most favorable to the appellee, when aided by such presumption of law that the deceased did not voluntarily destroy his own life. Federal Life Ins. Co. v. Thornton, Tex.Civ.App., 21 S.W.2d 352.

Indeed, if appellant's position on this issue is denuded of its insistence that "it is a physical impossibility to accidentally discharge a .22 rifle so that it will pass horizontally through the head where the victim is standing", there would be left no substantial support therefor. The appellee thus effectively, as seems to this court, makes brief but complete answer to that postulate: "Be that as it may, there is absolutely no evidence in this case that Dearing was standing at the time he was shot. It was shown that he was going hunting the next day; that he had occasion to handle his gun on the day he was shot, because it was his habit to clean his gun the day previous to the hunt, for the purpose of cleaning it, and to place into the gun the 'clip' containing the bullets. The gun was found alongside of the bed and parallel with the length of same. Dearing was found some distance away, standing and tightly holding a chest of drawers, and the evidence showed that apparently, in his mortal condition, he was striving to reach a door away from the bed, and away from the gun. It was shown that the floor by the side of the bed was a hardwood polished floor that was slick, and with no rugs thereon. Many situations could be conceived, from the ordinary experiences of life, whereby a man cleaning a gun, sitting on a bed, perhaps stooping over to reach for something on the floor, might have been shot through the head by the rifle held in his hands or if same had fallen from his hands. If the gun had been placed by Dearing directly, and deliberately at his temple, there would have been powder burns. The defense produced the homicide officer of the police department of the City of Houston, but no attempt was made to prove that there were any powder burns on Mr. Dearing's forehead, and the record does not disclose that Dearing left any 'suicide note'."

Without further discussion, these additional authorities are cited in this connection: Southland Life Ins. Co. v. Brown, Tex.Civ.App., 121 S.W.2d 653, error dismissed; Brockman v. J. Weingarten, Tex.

Civ.App., 115 S.W.2d 753, affirmed 134 Tex. 451, 135 S.W.2d 698.

A subsidiary contention of appellant—to the effect that the trial court erred in submitting quoted issue No. 2 to the jury—is overruled without discussion, upon a finding —inferable from what has already been said —that no reversible error has been pointed out in that connection.

These conclusions require an affirmance of the trial court's judgment; but since that judgment was only for the aggregate sum of $2,496.20, and since—by written stipulation of the parties appearing in the record —it was agreed that appellee should have a further recovery of $150 for attorney's fees, in the event of an appeal of this cause, which has occurred, there is here added to the $2,496.20 so awarded below such sum of $150, making a total of $2,646.20. As so reformed, the judgment will, therefore, be affirmed.

Reformed and affirmed.