**GREAT SOUTHERN LIFE INS. CO.,**
**Appellant,**

v.

**Georgia M. S. WATSON, Appellee.**

No. 7019.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 6, 1961.

Rehearing Denied March 6, 1961.

Vinson, Elkins, Weems & Searls, Houston, B. Jeff Crane, Jr., Houston, of counsel, for appellant.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellee.

NORTHCUTT, Justice (dissenting).

Mrs. Georgia Watson sued Great Southern Life Ins. Co. to recover upon an insurance policy issued to William Edison Watson, her husband, in which she was beneficiary. The policy provided double indemnity in case of death by accident. The parties will be referred to herein as they were in the trial court. It is undisputed that the policy was in force at the time of the death of William Watson and that Watson died from gunshot wounds. Plaintiff alleged that William Edison Watson was accidentally killed as a result of a gunshot wound and not from suicide.

The defendant answered admitting the policy was in force on September 9, 1959 at the time of the death of Watson; that said policy provided for the payment of $25,000 to the beneficiary of said policy subject to the exceptions and provisions in said policy and further provided for the payment of an additional sum of $25,000 to the beneficiary upon receipt of due proof that the death of insured, William Edison Watson, resulted solely from bodily injury caused directly and independently of all other causes by accidental, violent and external means. It pleaded the insured, William Edison Watson, died from suicide and self-destruction on the 9th day of September, 1959 and that defendant was not liable herein because the provisions of the policy provided that if the death of insured occurred within two years from the date of issue thereof, by suicide while sane or insane, the liability of the company was limited to the amount equal to the premiums which had been paid. The defendant paid to the clerk of the court the amount of the premiums paid, and the court ordered the same accepted by the clerk pending the final disposition of the cause.

The case was tried to the court without a jury. The court entered its judgment finding that the plaintiff was entitled to recover the $25,000 base limits of the policy, the $25,000 double indemnity benefits and the statutory 12 per cent penalty on the total or $6,000 and a reasonable attorney's fees which the court found to be $10,000. The court accordingly entered judgment in favor of the plaintiff for the amount of $66,000 together with interest thereon from date at the rate of 6 per cent per annum. From that judgment the defendant perfected this appeal. This appeal is presented upon three points of error contending there was no evidence that the insured, William Edison Watson, died as a result of external, violent and accidental means; the evidence conclusively established that the insured died by suicide and self-destruction, and because the evidence was not sufficient to establish that the insured died as a result of external, violent and accidental means.

In presenting her case to the court the plaintiff offered in evidence the insurance policy; death certificate showing Watson died from gunshot wounds; exhibits three

through seven, both inclusively, showing pictures of Watson after being shot and then admissions that the death of Watson resulted solely from gunshot wound or wounds to his body on September 9, 1959 and that he died on that date. Plaintiff next offered the evidence of J. D. Miller who testified as to where the body was found and its position and where the gun was laying. Next plaintiff offered the evidence of J. O. Fitzjarrald, an attorney, as to what would be a reasonable attorney's fees for handling this suit. Then the plaintiff rested. The question up to this time is whether the plaintiff brought her cause within the rule requiring her to establish that the case was not one of suicide. The burden was on the plaintiff to prove that the deceased did not commit suicide in order to bring her claim within the terms of the policy. Rowley v. American Nat. Ins. Co., Tex.Civ.App., 124 S.W.2d 173; Woodmen of World Life Ins. Soc. v. Smauley, Tex.Civ.App., 153 S.W.2d 608. It is stated in the case of American Nat. Ins. Co. v. Fox, Tex.Civ.App., 184 S.W.2d 937, at 943 (Writ refused, W. M.) as follows:

"The burden was upon the plaintiff to make out a case, aided by such presumptions as are recognized by the law. There is no presumption that the insured voluntarily brought the danger upon himself. The presumption, based upon the recognized instinct of self-preservation, is to the contrary."

It is stated in the case of Great American Life Ins. Co. v. Dearing, Tex.Civ.App., 193 S.W.2d 250, 253 (Writ refused, N. R. E.):

"[2, 3] Concededly by appellee, since she sued upon the accidental benefit provision of the policy in suit (Section 15 thereof), as is well settled, she had the burden of establishing that the case was not one of suicide, which, as recited supra, she succeeded in doing to the satisfaction of both the trial court and the jury. This court holds, as against the position of the appellant, that she did at least produce enough

evidence against the appellant's suicide theory as brought the determination of that question within the province of the jury.

"[4] In the first place, it is also well settled, as appellant expressly concedes, that there is a very strong presumption in the law against the commission of suicide, in which, in an instance where one shoots himself, as the appellee's husband is conceded by both parties to have done, it is assumed that it was an accident rather than an intentional act; and further, even that the deceased was normal and without suicidal intent. Southland Life Ins. Co. v. Brown, Tex.Civ.App., 121 S.W.2d 653, error dismissed; Brockman v. J. Weingarten, Inc., Tex.Civ.App., 115 S.W.2d 753, affirmed 134 Tex. 451, 135 S.W.2d 698; 39 Tex.Jur. in footnote at page 853; Malley v. Union Indemnity Co., Tex.Com.App., 12 S.W.2d 1002."

When the plaintiff rested we think she had introduced sufficient evidence coupled with the presumption to sustain her claim until proof to the contrary was introduced to show suicide. The presumption against suicide is a rule of law and not a rule of evidence and such presumption cannot stand when the evidence submitted establishes facts to the contrary. McClelland et al. v. Great Southern Life Ins. Co., Tex.Civ.App., 220 S.W.2d 515 (Writ refused, N. R. E.).

We are familiar with the rule as laid down in the case of Renfro Drug Co. et al. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613, 23 A.L.R.2d 1114, by the Supreme Court where it is stated:

"[1, 2] No findings of facts or conclusions of law were requested of or filed by the trial judge. The trial court's judgment, therefore, implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto 'it is prop-

er to consider only that evidence most favorable· to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.' Austin v. Cochran, Tex.Com.App., 2 S.W.2d 831, 832; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696."

We must determine if there is sufficient evidence of a controverted fact in this case as to whether deceased committed suicide or not. The only disputed question is whether the shots were accidental or an act of intentional self-destruction. The plaintiff's evidence consists of the fact that Watson was killed by a gunshot and the evidence of several witnesses that they had known the deceased for several years and had not noticed any change in him and that he was a jovial person and so far as they knew he had no reason or motive to commit suicide. This testimony together with the presumption based upon the recognized instinct of self-preservation is sufficient to rebut any claim of suicide unless the evidence of the defendant shows the shooting was intentional. The judgment must stand, unless the evidence establishes that the shooting was intentional to that degree of conclusiveness which precludes a reasonable doubt to the contrary. United Fidelity Life Ins. Co. v. Adair, Tex.Civ.App., 29 S.W.2d 940, at page 944; Home Benefit Ass'n v. Buro, Tex.Civ.App., 10 S.W.2d 188.

The case of Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 767, by Com. of App. opinion adopted by the Supreme Court states:

"[4] The presumption is a true presumption, which has been defined as 'a rule of law laid down by the courts which attaches to facts certain procedural consequences'. McCormick & Ray's Texas Law of Evidence, Sec. 32, p. 48. It places on the party against whom it operates the burden of producing evidence. *It is not evidence and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict.* McCormick & Ray's Texas Law of Evidence, pp. 51, 58, Sections 34, 37; 20 Amer.Jur. pp. 170, 171, Sec. 166. (*Underlining* ours.)

"That such is the established rule in this state is settled by the authorities above cited, particularly Lewis v. J. P. Word Transfer Co. [Tex.Civ.App., 119 S.W.2d 106] and Houston News Co. v. Shavers [Tex.Civ.App., 64 S.W.2d 384]. In the Lewis case Associate Justice Looney quoted with approval a full and clear statement of the rule and its effect from the opinion of Associate Justice Alexander in the Shavers case. The approval by this court of the rule there stated, the substance of which has been given above, is evidenced by its refusal of applications for writs of error in both cases."

Under the terms of the policy, the burden was on the beneficiary to allege and prove the necessary elements of accident in order to recover double indemnity and after that was done it was then up to the insurance company to prove that deceased came to his death as a result of suicide to avoid liability for the face of the policy. [Since we have held the beneficiary had sustained her burden of proof as to the element of accident when she rested], we now must consider whether the defendant sustained its burden of proof that the deceased came to his death as a result of suicide. Since the presumption is not evidence, as stated in the case above cited, and has been rebutted in this case all the evidence left to establish the claim of the plaintiff is the testimony of the witnesses that they knew of no reason or· motive for Watson committing suicide.

Since the deceased was shot twice, he was bound to have been shot the first time before the first shell was extracted from the gun, and since the shell was found as testified to, and the gun having to be pumped and throwing the shell where it did it would have been impossible for the deceased to have accidentally shot himself both times under the chin because it would

have been impossible from the position of the body and where the shell was found. There is no evidence that the accident happened while deceased was getting through the fence. The undisputed record shows that deceased was bound to have been back closer to where the extracted shell was found when the first shot was fired, and the undisputed testimony showing that when the shell was extracted it would go up a little to the right and back of the deceased, the gun could not have been pointed in a manner to shoot the deceased under the chin as shown by this record.

We give very little credence to the testimony of those persons testifying that so far as they knew the deceased did not have any reason or motive to commit suicide. Webster defines reason as that which is supposed or affirmed to support or justify any conclusion, belief, or plan of action. Motive is a strong or impelling influence towards some particular object to be obtained or to be secured. This testimony was given without the witnesses showing they knew all the facts as shown in this record such as knowing about the deceased being badly burned whereby he lost a years work, was again burned, had recently been demoted in his job at a less income and was in arrears as to his note at the bank and yet had obligated himself to pay annually $703.25 to secure the policy in question and had paid $237.94 on the first annual payment. Some men commit suicide over or because of their financial condition, others keep fighting it, others take bankruptcy and forget their troubles. We doubt anyone, from casual observation, would be in position to even contemplate what would be a reason or motive for a person to commit suicide. However, we think there is some evidence sustaining appellee's contention and therefore overrule appellant's point that there is no evidence.

Mr. Watson was dead when his body was found. A 22-pump rifle was by his body when he was found. According to this record there were no eyewitnesses to the incident as to how he was killed. The undisputed evidence shows the deceased was shot twice. One of the bullets went in under the chin and came out through the bridge of his nose and the other bullet entered under the chin close to where the other bullet entered. There was no proof as to where this last-mentioned bullet was found in his head. There is no evidence in the record as to which bullet entered the body first, but there is evidence that the bullet that went up in the head was the one that caused the death of Mr. Watson and not the one going through the bridge of his nose. The testimony of three expert witnesses showed that after the first shot was fired the only way another shot could happen was to pull the lever down on the rifle which would extract the spent shell and then pull the lever back up and in that manner the gun would be reloaded and the gun would be cocked ready for firing and then the trigger would have to be pulled. The expert testimony after examining and testing the mechanism of the 22-pump rifle was that when the spent shell was extracted from the rifle it would throw the shell up and over and a little to the right and back of the person using the rifle. There was one shell found some six or eight feet west of the fence and the deceased's body was east of the fence and there was a spent shell still in the rifle. Since the deceased was shot twice and one shell was found as here shown and one shell was in the rifle, naturally the shell found west of the fence was the one fired first.

It is stated in the case of Langlitz v. American Nat. Ins. Co., Tex.Civ.App., 146 S.W.2d 484, 486, as follows:

"[3] We shall not undertake here to determine whether there is any necessary conflict between these two rules. We shall rather assume, without deciding, that both rules may operate. If so, it seems pretty clear to us that that can only be possible upon the theory that the evidence of facts to show (making the application to the instant case) that the death of the Insured resulted 'from bodily injury effected solely

through external violent and accidental means', etc., is at the same time the basis upon which said presumption operates, in lieu of evidence, to show that Insured did not 'commit suicide.' There is involved no shift whatever of the burden of proof as called for by the required pleadings. The presumption simply stands in lieu of evidence unless and until there is some evidence tending to show suicide. In National Aid Life Ass'n v. Driskill, Tex.Civ. App., 138 S.W.2d 238, we had occasion to consider and briefly discuss, but found it there unnecessary to decide, the very interesting question of whether a presumption of fact, such as that under discussion, constitutes any evidence after the introduction of evidence contrary to the presumption, upon the issue to which the presumption relates. Since that decision the Supreme Court, through the Commission of Appeals, seems to have decided this very question. In Empire Gas & Fuel Co. v. Muegge, Tex.Com.App., 135 Tex. 520, 143 S.W.2d 763, 767, in the opinion of Judge Smedley, it is said: "It is settled in this state, and by the weight of authority elsewhere, that such presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced. * * *

"The presumption is a true presumption, which has been defined as 'a rule of law laid down by the courts which attaches to facts certain procedural consequences.' McCormick & Ray's Texas Law of Evidence, Sec. 32, p. 48. It places on the party against whom it operates the burden of producing evidence. It is not evidence and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict."

The nearest case in point of like nature to this case that we have found is Boring v. Kansas City Life Insurance Company, 274 S.W.2d 233, 239, by the Supreme Court of Missouri where it is stated:

"The physical facts refute any other conclusion. The evidence shows that the first shot could have been accidentally fired but that the second and third shots necessitated a manual pumping of the gun, thereby excluding any possibility of its accidental discharge."

We will not lengthen this opinion by quoting further from the testimony; suffice it to say that we have carefully considered the same and in the light of the cases cited, we have come to the conclusion that the statement of facts present insufficient evidence of bodily injury to sustain the finding that the insured, William Edison Watson, died as a result of external, violent and accidental means. We sustain appellant's third point of error.

As stated in the case of American Casualty & Life Co. v. Morrison, Tex.Civ.App., 161 S.W.2d 796, 797 (Writ dismissed and the cases there cited) proof cannot be left open to conjecture and guesswork. See also the case of International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040, 1044, where it is stated:

"[8] The rule seems to be established in this state that, in order to find that injury effected by accidental means, the element of accident must be found in that which produced the injury rather than in the mere fact that the injury occurred. Bryant v. Continental Casualty Co., 107 Tex. 582, 588, 182 S.W. 673, L.R.A.1916E, 945, Ann. Cas.1918A, 517; International Travelers' Ass'n v. Ross (Tex.Com.App.) 292 S.W. 193; Travelers' Insurance Co. v. Harris (Tex.Com.App.) 212 S.W. 933, 934; International Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S.W. 630, 632.

"In the case of Travelers' Insurance Company v. Harris, supra, the Commission of Appeals, speaking through

Judge Sadler, in an opinion adopted by the Supreme Court, after an exhaustive review of the decisions which hold for and against the contention made here, says: 'In view of the decisions by our Supreme Court * * * we are of the opinion that the burden rests upon the plaintiff to show that her cause of action does not fall within the excepting clause.' "

We conclude that the judgment of the trial court should be reversed and remanded for another trial in accordance with this opinion. Judgment of the trial court is reversed and remanded.

CHAPMAN, Justice.

I respectfully dissent.

The majority opinion has correctly held that from the testimony presented by the plaintiff before she rested her case she had introduced sufficient evidence to justify the judgment rendered in her favor upon the insurance policy in question. The opinion correctly holds: "The judgment must stand, unless the evidence establishes that the shooting was intentional to that degree of conclusiveness which precludes a reasonable doubt to the contrary." United Fidelity Life Ins. Co. v. Adair, Tex.Civ.App., 29 S.W.2d 940; Tex.Com.App., 29 S.W.2d 944. " * * * there must be no room for fair and reasonable minds to reach different conclusions from the evidence." Grand Fraternity v. Melton, 102 Tex. 399, 117 S.W. 788, 789. Thus, the majority has held if there is a reasonable doubt that the shot which killed the deceased was accidentally fired the judgment of the court below must stand. I have to assume then that they set the judgment aside upon the testimony alone of M. T. Robertson, a gunsmith of Amarillo. This would have to be true because appellant used only three witnesses and the other two were deputy sheriffs who testified only to the physical facts as they found them at the scene of the tragedy, which facts did not in any sense of the word preclude the possibility of accidental death. Let us then look to the testimony of Mr. Robertson. Actually, when his testimony is summed up it was only to the effect that after the first shot was fired the gun would have to be pumped to put the next shell in the chamber and then the trigger would have to be pulled.

This writer can vision from the physical facts any number of possibilities by which the gun could have been fired accidentally. The exhibits in evidence indicate the deceased was in the process of crawling through a four strand barbed wire fence because he was found dead with his trousers leg hung to the second strand of wire from the top. The testimony shows that he carried the gun with him to shoot rattle snakes, coyotes, and other wild game. If he was at the time going through the fence after game with the gun in firing position with the barrel toward him and the butt of the stock on the ground and the trigger was accidentally pulled for the first shot while he was going through the fence it would have been very easy for him to have pumped the gun while holding on to it as a brace while in the process of falling. His thumb or one of his fingers could have then pulled the trigger or the pressure against one of the wires could have done so. This is just one of any number of possibilities that are easily demonstrated with the gun.

Doctor Hamra was the examining physician for the appellant on the insurance contract here sued upon. He testified the first shot, "In going through there like it did, it could have caused him to have—like a convulsive movement, or seizure of some type. * * * People shot down will often drop down and not make any motion. Other people shot will actually move their hands and feet—you have motor areas in the brain. You can prick them and it will cause you to move an arm or a leg, or something like that."

Doctor Massad had been the deceased's treating physician for many years. He testified the deceased was a quite jolly sort of fellow, that the last time he had seen

him he was as normal as he had ever seen him and that so far as he knew he had no motive to commit suicide. Doctor Hamra also testified, "From what I knew, I didn't think he had a motive [to commit suicide]."

Doctor Weir testified in substance that from the first shot deceased could have gone into tetanic contractions and spasms of the muscles and could have made a lot of motions. I believe then that it is a fair statement from the medical testimony to say that the mechanism of the gun could have been operated unconsciously by such involuntary reactions of the body through convulsive movements of the arms and hands. This creates another possibility which this writer believes makes it improper for this court to say that the evidence establishes that the shooting was intentional to that degree of conclusiveness which precludes a reasonable doubt to the contrary.

When this record is considered as a whole we think it is also significant to note that deceased did not go to appellant and buy the policy of insurance on his life. To the contrary appellant's agent went to his house without solicitation in an effort to sell him some insurance and the testimony shows by the agent that in his sales talk he showed him the retirement benefits of the policy whereby at his age it would have a cash value after it had been in force for 20 years of $432 per year. Additionally many business and professional men, people who worked with him, and his wife testified they knew of no motive deceased could have had to take his own life. His wife testified their home life was pleasant and the record is completely silent concerning any involvement with any other woman. His banker's testimony shows he had no financial difficulties.

The majority opinion has correctly stated the law in quoting from Renfro Drug Co. v. Lewis, supra, where the trial was to the court and no findings of fact were requested of or filed by the trial judge. See also McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643. When these rules are applied

to the record before us I find myself unable to concur with the result reached by the majority. Actually, that opinion in quoting from the Renfro case correctly quotes the law in considering a no evidence point and then when applying the law to the facts passes only upon the general sufficiency or great weight and preponderance of the evidence to support the judgment of the lower court without anywhere applying the facts to the no evidence point raised.

In a case where the evidence was much stronger toward an indication of suicide than in the instant case and with a great deal of motive shown [whereas no motive is shown in our case] this court upheld a lower court verdict for the beneficiary and the case was affirmed by the Commission of Appeals. United Fidelity Life Ins. Co. v. Adair, 29 S.W.2d 940; 29 S.W.2d 944.

It is hardly to be presumed from the evidence in this case that deceased would have left the doors of his car open, the motor running, left the radio on and crawled into a fence to commit suicide. There is ample evidence from which the court, the fact finder in this case, could have concluded the shot that went through the deceased's chin and came out the bridge of his nose [the one which left the powder burns] was accidental and that it knocked him unconscious but was not fatal. If it was the first shot and knocked him unconscious and the second shot was fired in some manner while he was unconscious it could not, a fortiori, have been suicide because there could be no intent to destroy himself without consciousness. Conversely, if he was attempting to destroy himself and the first shot did not accomplish his intent it seems reasonable to say if he was still conscious he would have fired the second shot with the barrel even closer to his body to make certain he did not miss a fatal area, yet there were no powder burns from that shot.

When all these possibilities are taken together with the rule of law, not of evidence, of the strong presumption against the commission of suicide I am compelled

to say that the judgment of the trial court should be affirmed.

DENTON, Chief Justice.

Disagreeing with the result reached and the application of the applicable rules of law by the opinion originally presumed to be this Court's majority opinion, I consider it necessary to express my views in this case. The other two opinions sufficiently state the material facts of the case. I will therefore refrain from repeating them here.

Because of the nature of this case, the trial court's judgment must stand or fall on the application of well-established rules of law which have to do with applying various rules of evidence and procedure. Appellant's appeal is based on the contentions that there is "no evidence" and "insufficient evidence" to support the judgment of the trial court.

Both opinions clearly state the presumptions of law applicable in this type of case. Where death resulted from violent and external means and not from disease, the presumption is in favor of accidental death and against that of suicide. United Fidelity Life Ins. Co. v. Adair, Tex.Com.App., 29 S.W.2d 944, 24–B Tex.Jur. 928. However, in spite of this presumption of law the burden of proof is upon insured's beneficiary to prove that insured's death was accidental and not within the exceptions of the insurance policy. International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W. 2d 1040. It is also a well-settled rule that where suicide is alleged by insurer as a defense, the burden of proof is upon the insurer to sustain this issue by overcoming the presumption of suicide. First States Life Co. v. Ransom, Tex.Civ.App., 110 S.W. 2d 143 (no writ history); Southland Life Ins. Co. v. Brown, Tex.Civ.App., 121 S.W. 2d 653 (error dismissed); Texas Life Ins. Co. v. Jordan, Tex.Civ.App., 253 S.W.2d 906 (error refused).

In applying these presumptions and rules of law to appellant's first point of error of "no evidence," the evidence must be re-viewed in the light most favorable to the finding of the trial court. It is our duty to consider only the evidence favorable to the court's finding and disregard all evidence which is adverse or contrary to the favorable evidence. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508. In view of the favorable evidence presented and the admission by appellant that the deceased died solely as a result of gunshot wounds, we must conclude the facts and circumstances established by this favorable evidence and the inferences which can be reasonably drawn therefrom support trial court's findings. In reviewing such evidence before us along with the legal presumptions, it seems clear that we can not say as a matter of law that Watson committed suicide.

We next consider the fact question of whether the trial court's findings and judgment is against the great weight and preponderance of the evidence. In determining this question, this court must review all the evidence presented. Appellant's sole defense in this case is based on the proposition that Watson's death could not have been accidental but must have necessarily been suicide. This assertion is based on a gunsmith's testimony, corroborated by two deputy sheriffs, to the effect that the rifle could not have been fired twice in succession accidentally. The three witnesses testified the gun must be pumped and the trigger pulled in order to fire the rifle. When this evidence is reviewed along with other evidence presented, we can not say this evidence overcomes the presumption against suicide, and that such evidence makes the trial court's findings and judgment so contrary to the overwhelming weight of all the evidence as to be clearly wrong or manifestly unjust. The Commission of Appeals in United Fidelity Life Ins. Co. v. Adair, supra [29 S.W.2d 947], quoted with approval the following language:

"* * * * judgment must stand, unless the evidence establishes inten-

tional self-destruction, or suicide to that degree of conclusiveness which precludes a reasonable doubt to the contrary, and there must be no room for fair and reasonable minds to reach different conclusions from the same evidence."

In our view, appellant has not sustained this burden. We are of the further opinion that past actions, words and moods of the deceased are relevant as to any motive or intent to commit suicide. The court, in United Fidelity Life Ins. Co. v. Adair, supra, considered these factors and we think they should be considered here.

It now appears that two members of this Court are of the opinion that the judgment of the trial court should be affirmed. Therefore, the original opinion which was presumed to be the majority opinion at the time it was written must now become a dissenting opinion. Therefore, the judgment of the trial court is affirmed.